**STATE of Missouri, Respondent,**

v.

**McKinley ROBINSON, Appellant.**

**No. WD 37315.**

Missouri Court of Appeals, Western District.

March 25, 1986.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 24, 1986.

Application to Transfer Denied June 17, 1986.

Kathleen Murphy Markie, Columbia, for appellant.

William L. Webster, Atty. Gen., Jefferson City, John M. Morris, Asst. Atty. Gen., for respondent.

Before DIXON, J., Presiding, and MANFORD and NUGENT, JJ.

PER CURIAM:

Defendant appeals from a jury-trial conviction of possession of a weapon on the premises of a correctional institution, § 217.360.1(4), RSMo Supp.1984, and assault in the first degree, § 565.050, RSMo Supp.1984, and sentence to consecutive five- and twenty-year terms of imprisonment.

Defendant contends that the trial court erred in the following respects: by failing to give a requested instruction on emergency justification as a defense; and, by submitting the assault count to the jury because there was no evidence to support a finding of intent to cause serious physical injury. The judgment is affirmed.

Defendant was charged with possession of a weapon on the premises of a correctional institution and with assault on a guard. The charges arose out of an incident that took place at the Missouri State Penitentiary where defendant was an inmate.

On the afternoon of the incident, two corrections officers, Robert Brooks and David Dormire, observed several inmates, some of whom were armed, fighting on the upper lawn. Defendant was carrying a homemade knife six to ten inches long. The officers, who were unarmed, approached the disturbance.

Brooks testified that as he approached, the group of inmates generally moved away from him. Defendant turned toward Brooks and swung the knife at him, saying, "Come on or I will kill you." Brooks asked defendant to surrender the knife, but defendant continued to hold it out toward Brooks menacingly. At that time, according to Brooks, there were no other inmates in the immediate vicinity. Brooks backed away from defendant, and permitted defendant to run down a slight slope into the lower yard.

On the slope leading down into the lower yard, defendant was surrounded by five prison personnel. A guard, Looten, asked defendant to surrender his knife. Brooks testified that again there were no other inmates in the immediate area. Looten was talking to defendant and trying to calm him down and talk him out of the knife. Defendant used the knife to keep Looten at a distance by stabbing and slashing at him. Looten and the other guards backed up the hill into the upper lawn. Defendant followed the guards to the top of the slope, where four or five of the guards formed a circle around him. The guards then backed defendant up to the door to the main corridor, which leads to the control center and the dining areas. Defendant still would not surrender the knife, although the guards had formed a circle around him and no other inmates were close by.

At this time another officer, Robert Malone, responding to a radio transmission from the yard, came through the control center onto the upper lawn. He saw defendant, who was carrying a knife, start down the main corridor. Malone testified that he and several other officers followed twenty or thirty feet behind defendant. Malone was not aware of any other inmates in the corridor. After defendant had gone a short way down the corridor, he suddenly wheeled around and, raising the knife, asked, "Do you want some of this?" Defendant then charged back down the corridor toward Malone, and swung the knife in a wide swipe at Malone. Malone tried to back up, but his way was blocked by the other officers, and he tripped and fell. The knife narrowly missed Malone and struck the wall of the corridor. The impact of the knife striking the wall caused sparks to fly and blunted the tip of the knife. Defendant continued to advance while Malone, who was unarmed, was on the ground. Defendant swung the knife several times and Malone kicked at the knife. Then defendant turned and fled down the corridor toward the control center.

At that point, the warden, Bill Armontrout, and several other officers joined Malone's group. A few of the officers were armed with shotguns. Someone handed Malone a shotgun. The officers proceeded down the corridor in the direction defendant had gone. As they walked down the

corridor, they saw defendant and several other inmates approaching from the opposite direction. The officers called out orders to defendant to drop his knife. Defendant continued to advance until the officers chambered the shells in their shotguns. Defendant then threw down the weapon and surrendered.

Defendant testified that he first encountered officer Looten in the main yard, where a number of other inmates, some of whom were armed, were milling around. He refused to surrender his knife to Looten only because he was afraid of the other inmates. When he evaded Looten and the other officers, he was attempting to get back to the control center to surrender the knife.

Defendant also testified that he first saw Malone as he entered the corridor that leads past the control center. When he entered the corridor, Malone and several of the other guards followed. Defendant swung the knife at Malone to hold him back until he could reach the control center. After he had gone down the corridor and around the corner, defendant met several other inmates with whom he was friendly. The group then came back up the corridor toward the control center, where they surrendered. Defendant testified that he did not surrender to Malone when they first met because he was fearful of other inmates. The two inmates who attacked him at the beginning of the fracas had retreated down the corridor, and defendant did not know whether they were still between him and the control center. He claimed that inmates have previously been stabbed while in the company of guards, and he would not have felt safe without the knife until he reached the control center.

■ On appeal, defendant argues that the trial court erred by refusing to instruct the jury on the defense of justification with respect to the charge of possession of a weapon. He claims that the instruction was warranted because the threat posed by the other inmates made retaining the knife necessary and justified until he reached a secure place.

The defendant is entitled to instructions on any theory of his case that the evidence tends to establish, *State v. Shivers*, 458 S.W.2d 312, 316 (Mo.1970). Section 563.-026, RSMo 1978, provides that otherwise criminal conduct "is justifiable and not criminal when it is necessary as an emergency measure to avoid an imminent public or private injury which is about to occur ... *through no fault of the actor....*" (Emphasis added). The Notes on Use for the instruction, MAI–CR 2d 2.40, specify that the instruction need only be given when the trial court determines that "the claimed facts and circumstances, if true, are legally sufficient for justification." Note 4. On review, we need only look to whether substantial evidence was contained in the record to warrant the instruction. *State v. Urhahn*, 621 S.W.2d 928, 933 (Mo.App.1981).

The claimed facts and circumstances warrant an instruction on the defense of justification only when the alleged criminal conduct was "occasioned by a situation which developed through no *fault of the defendant.*" Id. (Emphasis added). Defendant testified that he acquired the knife in self-defense, because he took it away from an attacker. There may be a fact issue under the evidence in this case as to the fault of the defendant in the initial acquisition of the knife. It is unnecessary to reach or decide that factual issue. Even if it is assumed that the factual issue as to the original possession is resolved in favor of the defendant, that does not require reversal for failure to give the justification instruction.

The charge of possession of the knife on the premises of the correctional institution is a continuing charge. In order to prove facts requiring the court to give the instruction, the defendant must show his *continuing possession* of the knife was without fault.

First, the testimony of the guards demonstrates that defendant had an opportunity to safely surrender the knife in the upper yard. According to Brooks's testimony, defendant was momentarily sur-

rounded by four or five guards before he entered the main corridor. The guards stood in a circle around defendant. Brooks testified that no other inmates were present in the area. Defendant would not surrender the knife. The guards were unarmed. They allowed defendant to back up to the entrance to the main corridor and start down the corridor toward the control center.

Defendant testified that he saw Malone and several other guards follow him into the corridor. He claims that he swung the knife at Malone to hold the guards back and avoid capture because he did not feel the guards could protect him from other inmates. But the guards testified that no other inmates were present in the corridor, and the control center was only a short distance away. At the control center the guards could have armed themselves to protect defendant if his life was in danger. The instruction in this case was properly refused because the evidence demonstrates that defendant was at fault in retaining possession of the knife when he could have safely surrendered it.

■ Defendant's second point is that the trial court erred by submitting the first degree assault count to the jury, because the evidence was not sufficient to support the verdict. He argues that the state did not present any evidence that he attempted to cause serious physical injury to Malone. In making this determination, the court considers the facts in evidence and the favorable inferences reasonably drawn therefrom in the light most favorable to the state and disregards all evidence and inferences to the contrary. *State v. Goforth*, 535 S.W.2d 464, 466 (Mo.App.1976). The defendant's evidence is disregarded except as it is favorable to the verdict of the jury. *Id.*

■ Assault in the first degree, without injury to the victim, "requires proof of a very specific intent on the part of the actor" to "cause serious physical injury." *State v. Gonzales*, 652 S.W.2d 719, 722 (Mo.App.1983); § 565.050 (Supp.1984). The intent element is generally not suscep-

tible of proof by direct evidence, and may be shown by circumstantial evidence. *State v. Heitman*, 613 S.W.2d 902, 905 (Mo.App.1981). In determining whether the actor had the requisite intent, the jury may consider the type of weapon used, manner and circumstances under which it is used, results, and other relevant factors. *State v. Leindecker*, 594 S.W.2d 362, 365 (Mo.App.1980). For instance, in *Gonzales*, defendant drove his automobile directly at a police patrol car in which an officer was sitting. *Gonzales*, 652 S.W.2d at 721. The officer escaped unharmed, but the court found the evidence was sufficient to show that defendant had the requisite intent "to cause serious physical injury." *Id.* at 723.

The testimony of the guards, in this case, was that defendant swung a large knife at Malone, and that he continued to try to stab Malone after Malone had fallen. In these circumstances, the evidence, viewed in the light most favorable to the state, was sufficient to warrant the jury in finding defendant guilty of assault with intent to cause serious physical injury.

The judgment and conviction are affirmed.