STATE of Missouri, Respondent,

v.

Tony MANN, Appellant.

No. 25342.

Missouri Court of Appeals,
Southern District,
Division One.

March 29, 2004.

James R. Hobbs, Marilyn B. Keller, Wyrsch, Hobbs, & Mirakian, P.C., Kansas City, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Leslie E. McNamara, Asst. Atty. Gen., Jefferson City, for Respondent.

ROBERT S. BARNEY, Presiding Judge.

Tony Mann, ("Appellant") appeals his conviction and sentence for assault of a law enforcement officer in the first degree, § 565.081.1, and armed criminal action, § 571.015.[1] Following a court-tried case, Appellant was sentenced to life in prison for the first degree assault charge, and to ten years in prison for armed criminal action, the terms to run concurrently. In his sole point on appeal, Appellant posits that the trial court erred in denying his

---

1. All statutory references are to RSMo 2000, unless otherwise stated.

motion for judgment of acquittal because there was insufficient evidence to convict him on either of the aforementioned charges due to the failure of Respondent to prove Appellant's "specific intent to seriously injure or kill," as required under section 565.081.1. We affirm.

Viewing the facts in a light most favorable to the verdict, *State v. Bewley*, 68 S.W.3d 613, 615 (Mo.App.2002), the record reveals that on the evening of October 4, 2001, two Springfield police officers, Officer David Shanholtzer and Officer David Meyer, were conducting surveillance on Appellant's residence in an unmarked police car. While the officers were watching Appellant's house, Appellant rode past them several times on a motorized scooter and then proceeded to operate the scooter in a reckless manner by swerving into oncoming lanes of traffic. The officers decided to initiate a traffic stop of Appellant for driving the scooter erratically, but by the time they pulled out of their location, they had lost sight of him.

After driving around the block several times, the officers once again encountered Appellant, who was now riding a bicycle. As Appellant rode past them, Officer Meyer identified himself as a police officer and asked Appellant if they could talk to him for a minute. Appellant answered, "No," and continued riding past the officers.

The officers activated the "red dash lights," on their vehicle and turned the vehicle around in an attempt to pursue Appellant. The officers followed Appellant until he veered off the street and rode in between two houses. The officers then parked and secured their vehicle, grabbed their hand-held radios, and went in search of Appellant. Officer Meyer proceeded down the street and Officer Shanholtzer

walked quickly toward the house where Appellant had last been spotted.

Coming around the back of the house in the darkness, Officer Shanholtzer saw Appellant in the beam of his flashlight about thirty yards away. Appellant was "standing back behind the waist-high fence ... facing [Shanholtzer] with his hands down in his waist area, below the vegetation in the fence and [where Shanholtzer] couldn't clearly see his hands." Officer Shanholtzer yelled for Appellant to show his hands, and when Appellant raised his hands, Appellant fired a shot at the officer. Officer Shanholtzer described the report of the shot as being "loud" and that he "saw the flash from the muzzle of the gun." Officer Shanholtzer then took cover behind a shed and drew his "duty gun". Officer Meyer came running up behind him and they radioed for back-up. When Officer Shanholtzer peered out from behind the shed, Appellant was no longer there. Fearing that Appellant might "ambush [them] again from that location," the officers retreated to their vehicle and awaited assistance.

Once "back-up" arrived, a canine officer tracked Appellant's scent from the scene of the shooting back to his residence. Shortly after midnight gas was deployed into Appellant's house in an effort to force him to surrender. Approximately five to ten minutes later Appellant emerged from the residence and was arrested. Subsequent to procuring a search warrant, the special investigations unit began to search Appellant's home. The search revealed several handguns, including one which had a bullet in the chamber, a backpack containing ammunition, as well as numerous boxes of ammunition throughout the house.[2]

---

**2.** At trial Appellant acknowledged that he had been convicted of "[f]elony possession of a

firearm" and was serving a "Federal penitentiary sentence" at that time, which charge

At trial, Appellant testified that "scared" and "in a panic," he had "[tried]to get away" from the officers. He stated that he knew he had a pistol in the "tool pouch" of his mountain bike and that he could get in trouble for being a felon in possession of a firearm. Specifically, he testified, "I had something I wasn't supposed to have with me, and I was trying to get away. And by this time, I'd decided that they are police, and I hear them yelling. And I take the pistol out of the bag and fire it skyward ... to get a little distance from them." He stated that he never intended to hit Officer Shanholtzer with the bullet and that he "wasn't trying to hurt anyone," although he admittedly "fire[d] a gun in the proximity" of a police officer. Additionally, Appellant testified that he fired a single shot, although his weapon was capable of being fired in rapid succession. He stated he "wasn't trying to have a gun battle or anything of that nature." Asked on cross-examination whether he had been using methamphetamine for several days prior to the incident, Appellant answered, "I'd done some methamphetamine, yes."

At the close of all the evidence, Appellant filed a motion for judgment of acquittal, which was denied by the trial court. The trial court found Appellant "guilty of assault of a law enforcement officer in the first degree beyond a reasonable doubt" and "guilty of armed criminal action." Appellant was sentenced to life in prison for assault of a law enforcement officer in the first degree and 10 years for armed criminal action, with the sentences to run concurrently to each other and to the federal offense Appellant was already serving. This appeal followed.

 The appellate court reviews the sufficiency of the evidence in a court-tried criminal case by applying the same standard used in a jury-tried case. *State v. Agee*, 37 S.W.3d 834, 836 (Mo.App.2001). " 'We review the denial of a motion for acquittal to determine if the state adduced sufficient evidence to make a submissible case.' " *State v. Howard*, 973 S.W.2d 902, 906 (Mo.App.1998) (quoting *State v. Foster*, 930 S.W.2d 62, 63 (Mo.App.1996)). Where Appellant contests the sufficiency of the evidence to support his conviction, appellate review is limited to a determination of whether there is sufficient evidence from which a reasonable trier-of-fact might have found Appellant guilty beyond a reasonable doubt. *See State v. Silvey*, 894 S.W.2d 662, 673 (Mo. banc 1995); *Agee*, 37 S.W.3d at 836. The Court is required to take the evidence in the light most favorable to the State and to grant the State all reasonable inferences from the evidence. *State v. Whalen*, 49 S.W.3d 181, 184 (Mo. banc 2001). The Court disregards contrary inferences, unless they are such a natural and logical extension of the evidence that a reasonable juror would be unable to disregard them. *Id.* " 'Taking the evidence in this light, the Court considers whether a reasonable juror could find each of the elements beyond a reasonable doubt.' " *Id.* (quoting *State v. Grim*, 854 S.W.2d 403, 411 (Mo. banc 1993), *cert. denied*, 510 U.S. 997, 114 S.Ct. 562, 126 L.Ed.2d 462, (November 29,1993)).

In his sole point on appeal, Appellant argues that there was insufficient evidence adduced at trial to prove that he "had the specific intent to seriously injure or kill" either of the officers involved in this matter. He further maintains that the only evidence that related to that element was the testimony of Officer Shanholtzer, who "gave two contradictory versions of the

arose from the incident under review. Appellant also testified that he had received a seven-year prison sentence in 1992, for distributing methamphetamine, and that he was reincarcerated in 1999 for a parole violation on that latter conviction.

facts and whose testimony was contrary to an established physical fact." Appellant argues that at most he was guilty of assault of a law enforcement officer in the third degree, because his actions constituted no more than recklessness or criminal negligence.

Section 565.081.1 provides that "[a] person commits the crime of assault of a law enforcement officer . . . in the first degree if such person attempts to kill or knowingly causes or *attempts* to cause serious physical injury to a law enforcement officer . . . ." § 565.081.1 (emphasis added).

In the instant matter, the felony information charged that Appellant "attempted to kill or cause serious physical injury to Officer, David Shanholtzer by shooting at him."

■ It is well settled that one attempts to commit an offense when, with the purpose of committing the offense, he does any act which is a substantial step towards commission of the offense. *State v. Withrow*, 8 S.W.3d 75, 78 (Mo. banc 1999). " 'A "substantial step" is conduct which is strongly corroborative of the firmness of the actor's purpose to complete the commission of the offense.' " *Id.* (quoting § 564.011). To act with a firm purpose means that it is the actor's conscious object to engage in certain conduct or to cause a certain result. *Whalen*, 49 S.W.3d 181, 187 (Mo. banc 2001); § 562.016.2.

Accordingly, " '[t]here emerges here a clear requirement that conviction of an attempt to kill or to cause serious physical

injury requires proof of a very specific intent on the part of the actor to accomplish that objective.' " *Whalen*, 49 S.W.3d at 186 (quoting *State v. Gonzales*, 652 S.W.2d 719, 722 (Mo.App.1983)); *see also England v. State*, 85 S.W.3d 103, 107 (Mo. App.2002). ("Where the assault charge is based on an attempt to kill, courts have applied a heightened mental state, requiring evidence that the defendant acted 'purposefully.' ")

■ The specific intent element is generally shown by circumstantial evidence, as it is not readily susceptible to proof by direct evidence. *State v. Robinson*, 710 S.W.2d 14, 17 (Mo.App.1986). Intent may be inferred from surrounding facts, such as evidence of defendant's conduct before the act, from the act itself, and from the defendant's subsequent conduct, *State v. Chambers*, 998 S.W.2d 85, 90 (Mo.App. 1999), as well as "the type of weapon used, manner and circumstances under which it is used, results, and other relevant factors." *Robinson*, 710 S.W.2d at 17.

In the present case, there is no issue as to whether or not Appellant fired the .380 caliber pistol, or knew that law enforcement officers were pursuing him. Appellant readily admits both of those facts. Here, by its finding of guilt the trial court chose to believe Officer Shanholtzer's testimony that Appellant pointed the .380 caliber pistol directly at Officer Shanholtzer and fired the weapon, as opposed to Appellant's testimony that Appellant intentionally fired the gun into the air.[3]

---

**3.** Appellant characterizes Officer Shanholtzer's testimony as contradictory, with the consequence it should have been legally disregarded under *State v. Williams*, 481 S.W.2d 1, 2–3 (Mo.1972). Appellant contends that in one instance the officer testified "[Appellant] was difficult to observe because he was located behind a fence covered in vegetation, and a large tree cast [Appellant] in a dark shadow," and in the other instance, the officer testified he could "suddenly see very clearly that [Appellant] raised his hands up and fired a gun at him." We disagree. What Officer Shanholtzer actually testified to was that although it was very dark, he used a flashlight to see in front of him, and that he "shown the flashlight on [Appellant]" and that Appellant was "standing and facing me with his hands down

 We observe that " 'witness credibility is a matter for the trial court, and is not within the province of the appellate court in a court-tried criminal case.' " *Bewley*, 68 S.W.3d at 618 (quoting *State v. Daniels*, 18 S.W.3d 66, 68 (Mo.App.2000)). We are mindful that the function of the reviewing court is not to reweigh the evidence, but to determine if the conviction is supported by sufficient evidence. *Agee*, 37 S.W.3d at 836. " 'This same standard applies to the court's review of both direct and circumstantial evidence.' " *Id.* (quoting *State v. Dawson*, 985 S.W.2d 941, 946 (Mo.App.1999)).

Appellant's only available defense was lack of intent to cause serious physical injury to Officer Shanholtzer. Appellant repeatedly stated that his purpose in firing the .380 caliber pistol was to "give [himself] a little distance" to get away. He knew that if he were arrested with the gun in his possession he could face firearm charges based of his status as a felon. The fact that Appellant intentionally discharged a weapon "in the proximity" of a police officer is illustrative of his decision to take a substantial step toward injuring the officer if necessary to his get away. *See State v. Depriest*, 822 S.W.2d 488, 490 (Mo.App.1991). ("A jury could reasonably infer that Defendant intended to inflict or attempt to inflict serious physical injury on the officer to avoid apprehension and thus, a return to prison.")

Furthermore, the natural consequence of firing a deadly weapon, such as a pistol, in the direction of Officer Shanholtzer, in the absence of countervailing circumstances, "is, at the very least, great bodily harm." *State v. Heitman*, 613 S.W.2d 902, 906 (Mo.App.1981). Here, there was no evidence from any source suggesting self-defense, justification, or extenuating or mitigating circumstances. These facts coupled with Appellant's flight from the police only moments before lead to a reasonable inference that Appellant acted with the intent to inflict serious injury on the officer to avoid apprehension and thus, a return to prison. *Depriest*, 822 S.W.2d at 490. The court was clearly able to infer that Appellant had the specific intent to kill or cause serious physical injury to Officer Shanholtzer. *Whalen*, 49 S.W.3d at 186.

The judgment of the trial court is affirmed.

PREWITT and GARRISON, JJ., concur.

---

in his waist area below the vegetation in the fence and [I] couldn't clearly see his hands." Officer Shanholtzer then "yelled for [Appellant] to show his hands. And, when I did that, [Appellant] raised his hands up in front of him and fired a shot at me." We do not see how, contrary to Appellant's assertions, Officer Shanholtzer's testimony was contradictory on his ability to see Appellant point and shoot a gun at him.