STATE of Missouri, Respondent,

v.

Joe E. LEMONS, Appellant.

No. SD 29065.

Missouri Court of Appeals,
Southern District,
Division One.

Sept. 8, 2009.

Emmett D. Queener, Columbia, for Appellant.

Chris Koster, Atty. Gen., and John M. Reeves, Asst. Atty. Gen., Jefferson City, for Respondent.

ROBERT S. BARNEY, Judge.

Joe E. Lemons ("Appellant") appeals his convictions for one count of the Class B felony of possession of crack cocaine with the intent to deliver, a violation of section 195.211,[1] and one count of the Class A Misdemeanor of resisting arrest, a violation of section 575.150, RSMo Cum.Supp. 2006. Following a jury trial, Appellant was sentenced as a prior and persistent offender by the trial court to fifteen years in the Missouri Department of Corrections on the possession charge and to a concurrent term of one year in the county jail on the resisting arrest charge. The judgment of the trial court is affirmed.

Viewing the evidence in the light most favorable to the verdict, *State v. Charlton,* 114 S.W.3d 378, 385 (Mo.App.2003), the record reveals that in the late evening of June 19, 2007, Sergeant Joe Stewart ("Sergeant Stewart") of the Kennett Police Department was on patrol when he drove past Appellant who was standing near Mason's Bar on Baldwin Street in Kennett, Missouri.[2] Sergeant Stewart believed there was a municipal court warrant out for Appellant's arrest and he checked with dispatch to confirm that Appellant did, in fact, have an outstanding warrant. Sergeant Stewart then requested back up assistance from another officer and turned his vehicle around to go back to the location where he had first encountered Appellant. As Sergeant Stewart approached Appellant in his vehicle he noticed there were two other males standing there with him. When the trio spotted Sergeant Stewart's vehicle approaching their location, the two other individuals walked away "kind of in a hurried manner" toward the north side of Mason's Bar. Sergeant Stewart illuminated the men with his spotlight and the two men "started to jog away from [him], and that's when [he] exited [his] patrol car and yelled at them to stop."

Around this time, Officer Bernie Rogers ("Officer Rogers") arrived on the scene to assist Sergeant Stewart. He exited his vehicle and approached Appellant at which time he advised Appellant to stop because there was a warrant out for his arrest. Appellant started "walking real fast" away from Officer Rogers and then he took off running. Officer Rogers pursued Appellant on foot until Appellant jumped a fence and Officer Rogers was unable to follow him.

Approximately an hour later, in the early morning hours of June 20, 2007, Officer Rogers was patrolling the area in his patrol vehicle accompanied by Corporal Aaron Waynick ("Corporal Waynick"). They again encountered Appellant standing outside Mason's Bar. Officer Rogers pulled up to Appellant and Appellant "immediately tried to get around the patrol [c]ar, and Corporal Waynick got out of the car, yell-

---

1. Unless otherwise stated, all statutory references are to RSMo 2000.

2. There was testimony at trial that this was a known area for crack cocaine transactions.

ing to him to stop that he was under arrest." A pursuit ensued in which Corporal Waynick chased Appellant on foot through a residential area and Officer Rogers pursued him in his patrol vehicle. They eventually cornered Appellant in some bushes in the yard of a home. The officers informed Appellant he was under arrest and instructed him to put his hands behind his back. Appellant failed to do so and, instead, "la[id] on the ground and he placed his hand underneath him." He told the officers he "didn't do anything" and demanded to know why they were "messing with him." Corporal Waynick warned Appellant that if he did not put his hands behind his back as requested, they would have to mace him. When he still refused to cooperate, Corporal Waynick maced him and the officers cuffed his hands behind his back.

Appellant was arrested and, before placing him in the patrol car, Officer Rogers searched Appellant at which time he found a prescription pill bottle in Appellant's front left pocket.[3] Inside the bottle were "two small white rock like substances...." After Appellant was transported to the police station, Officer Rogers conducted a field test on the two rock-like substances found in the prescription bottle and the substances tested positive for the presence of cocaine base which is also referred to as crack cocaine.

A trial was held on February 11, 2008. At trial, John Higgins ("Mr. Higgins"), a supervising agent for the Bootheel Drug Task Force, testified that the drug of choice in the area where Appellant was arrested is definitely crack cocaine and it is routine for people in that area to sell small amounts of it at a time. He related that the average size of crack cocaine sold was 0.1 to 0.15 grams and the two rocks found on Appellant were consistent with

that size. He also testified that it is common for crack cocaine to be sold in rock form such as the ones found on Appellant as opposed to being individually packaged.

Amy Nix ("Ms. Nix"), a forensic chemist with the Missouri State Highway Patrol, testified that she tested two rocks which were in the form of crack cocaine. However, her testing was unable to conclusively determine whether the rocks were "cocaine" or whether they were "crack cocaine." She also related that cocaine base was the active ingredient in what is typically called crack cocaine, but she was unable to "determine [if the sample submitted to her] was cocaine or cocaine base. [She] had to report it as cocaine." Nevertheless, she also related that both "cocaine base" and "cocaine" were controlled substances.

At the close of all the evidence, the jury convicted Appellant of the crimes charged above and he was sentenced as previously set out. This appeal followed.

In his first point relied on, Appellant asserts the trial court erred in convicting and sentencing him for the crime of possession of crack cocaine with the intent to deliver because there was insufficient evidence to convict him of the "offense charged and submitted to the jurors ... because the laboratory analysis of the substance could not identify it as cocaine base, the substance referred to as crack cocaine, but identified it as the legally distinct substance of cocaine."

 When a defendant challenges the sufficiency of the evidence to support his conviction, we review to determine whether there is sufficient evidence from which a reasonable juror could have found the defendant guilty of the charged offense beyond a reasonable doubt. *State v.*

---

**3.** The record is unclear as to whether this was the front left pocket of his shirt or his pants.

*McCleod*, 186 S.W.3d 439, 443 (Mo.App. 2006). "The State has the burden to prove each and every element of its case beyond a reasonable doubt." *State v. Barnes*, 245 S.W.3d 885, 889 (Mo.App.2008). " 'The function of the reviewing court is not to reweigh the evidence, but to determine if the conviction is supported by sufficient evidence.' " *McCleod*, 186 S.W.3d at 443 (quoting *State v. Mann*, 129 S.W.3d 462, 467 (Mo.App.2004)). " 'In making that determination, we must view the evidence and all reasonable inferences drawn therefrom in the light most favorable to the verdict and disregard all evidence and inferences to the contrary.' " *Id.* (quoting *State v. Chavez*, 128 S.W.3d 569, 573 (Mo. App.2004)). "This Court may 'not supply missing evidence, or give the State the benefit of unreasonable, speculative or forced inferences.' " *State v. Whalen*, 49 S.W.3d 181, 184 (Mo. banc 2001) (quoting *Bauby v. Lake*, 995 S.W.2d 10, 13 n. 1 (Mo.App.1999)).

█ Here, there was testimony from several witnesses that the area in which Appellant was arrested is known for being a location where crack cocaine is readily used and sold. Further, there was testimony that crack cocaine is sold in rock form in small, unpackaged amounts such as the two rocks found on Appellant's person. Additionally, Officer Rogers testified that the substances field tested positive for containing cocaine base. While Ms. Nix was unable to definitively testify as to whether the substance she tested was cocaine or crack cocaine, she determined that cocaine was present in the sample; she could not rule out the fact that the substance was crack cocaine; and the sample was in the form of crack cocaine as opposed to another form of cocaine. Saliently, she testified that both "cocaine base" and "cocaine" were controlled substances which are of particular importance to our analysis.

Appellant was charged with a "violation of [s]ection 195.211 . . ." for "possession of a controlled substance . . . with intent to deliver, . . . crack cocaine. . . ." At trial, the verdict directing instruction on this charge, Instruction No. 6, informed the jury that it must convict Appellant if it found beyond a reasonable doubt that Appellant "possessed crack cocaine, *a controlled substance*, and . . . [he] knew or was aware of it[s] presence and nature, and . . . [he] intended to deliver or sell the crack cocaine to another person or persons. . . ." (Emphasis added.) What Appellant takes issue with on appeal is Ms. Nix's testimony that her tests on the substance found on his person were inconclusive as to whether the substance was crack cocaine or simply cocaine.

In *State v. Bell*, 855 S.W.2d 493 (Mo. App.1993), there was a situation similar to the one found in the present matter. In *Bell*, the defendant was charged via information with knowingly possessing " 'cocaine, a controlled substance. . . .' " *Id.* The arresting officer testified the substance found on the defendant "appeared to be 'rock cocaine' " and the forensic chemist testified the substance "contained 'cocaine.' " *Id.* The defendant was convicted of the crime charged.

On appeal, he argued there was insufficient evidence to support his conviction "because the testimony clearly established that the substance seized from [the defendant] was 'crack cocaine,' or 'cocaine base,' which as a matter of law is a substance fundamentally different than 'cocaine' " the substance charged in the information. *Id.* at 494. The reviewing court noted the defendant "was charged pursuant to [section] 195.202, which makes it 'unlawful for any person to possess or have under his or her control a

controlled substance.' The statute does not make a legal distinction between cocaine and cocaine base. It merely regulates possession or control of a 'controlled substance.'" *Id.* (internal citation omitted). Additionally, the reviewing court looked to section 195.017.4(1)(d), the definitional statute for such crimes, and recited that it stated at that time that a controlled substance included "'coca leaves and any salt, compound, derivative, or preparation of coca leaves, and any salt, compound, derivative, or preparation thereof which is chemically equivalent or identical with any of these substances, but not including decocainized coca leaves or extractions which do not contain cocaine or ecgonine....'" *Bell,* 855 S.W.2d at 494 (quoting section 195.017.4(1)(d), RSMo Cum.Supp.1992). Quoting *State v. Smith,* 825 S.W.2d 388, 390 (Mo.App.1992), the *Bell* court noted "'cocaine base is essentially "pure cocaine" in its undiluted chemical form'" such that "identifying the substance as 'cocaine base or crack' is sufficient to identify it *as a controlled substance ....*" *Id.* (emphasis added). Accordingly, the reviewing court upheld the defendant's conviction.

Similar reasoning applies here. Appellant was charged under section 195.211.1, which sets out that "it is unlawful for any person ... to possess with intent to distribute, deliver, manufacture, or produce a controlled substance." Section 195.017.4(d), RSMo Cum.Supp.2006, classifies and defines the various types of controlled substances and criminalizes possessing the following cocaine related substances: "[c]oca leaves and any salt, compound, derivative, or preparation of

coca leaves, and any salt, compound, derivative, or preparation thereof which is chemically equivalent or identical with any of these substances, but not including decocainized coca leaves or extractions which do not contain cocaine or ecgonine...."

Accordingly, in the instant matter, whether the substance was cocaine or crack cocaine it is clear that it was a controlled substance the possession of which is prohibited by section 195.211.1. *See State v. Campbell,* 122 S.W.3d 736, 739 n. 4 (Mo.App.2004); *State v. James,* 796 S.W.2d 398, 399–400 (Mo.App.1990). The aforementioned facts were sufficient for a reasonable juror to reach the conclusion beyond a reasonable doubt that Appellant was guilty of possessing a "controlled substance" "with the intent to distribute" which is an act prohibited by section 195.211. Point I is denied.

In his second point relied on, Appellant maintains the trial court plainly erred in submitting Instruction No. 9 to the jury and in convicting him of the crime of resisting arrest because the instruction allowed the jury "to return a verdict against [Appellant] for which he was not charged because the amended information charged [him] with resisting arrest by fleeing from [Sergeant] Stewart, but the instruction and verdict found [Appellant] guilty of resisting arrest by fleeing from Officer[ ] Rogers and [Corporal] Waynick."

At the outset we note Appellant failed to object to Instruction No. 9 at trial such that he requests plain error review under Rule 30.20.[4] "Relief will be granted

---

4. We note that while Appellant requests plain error review he fails to cite a single case for the standard of review of such errors. Rule 84.04(e) clearly states that "[t]he argument shall also include a concise statement of the applicable standard of review for each claim

of error." Further, we note Rule 84.04(h)(3) requires that when an allegation of error is directed at a jury instruction, "[t]he complete text of any instruction to which a point relied on relates" should be included in the appendix to an appellant's brief. Appellant has also

under the plain error rule only if the error so substantially affects the right of the accused that manifest injustice or miscarriage of justice inexorably results if left uncorrected." *State v. Sullivan*, 935 S.W.2d 747, 758 (Mo.App.1996). Claims of plain error are reviewed "under a two-prong standard." *State v. Roper*, 136 S.W.3d 891, 900 (Mo.App.2004). "In the first prong, we determine whether there is, indeed, plain error, which is error that is 'evident, obvious, and clear.'" *Id.* (quoting *State v. Scurlock*, 998 S.W.2d 578, 586 (Mo.App.1999)). "If so, then we look to the second prong of the analysis, which considers whether a manifest injustice or miscarriage of justice has, indeed, occurred as a result of the error." *Id.* If Appellant cannot get past the first step, this Court should refrain from reviewing his claim. *State v. Brown*, 902 S.W.2d 278, 284 (Mo. banc 1995). "A criminal defendant seeking plain error review bears the burden of showing that plain error occurred and that it resulted in a manifest injustice or miscarriage of justice." *Roper*, 136 S.W.3d at 900. "The outcome of plain error review depends heavily on the specific facts and circumstances of each case." *Id.*

■■■■■ " 'Instructional error seldom constitutes plain error, which requires a defendant to demonstrate more than mere prejudice.'" *State v. Darden*, 263 S.W.3d 760, 763 (Mo.App.2008) (quoting *State v. Thomas*, 75 S.W.3d 788, 791 (Mo.App. 2002)). " 'For instructional error to rise to the level of plain error, the trial court must have so misdirected or failed to instruct the jury that it is apparent to the appellate court that the instructional error affected the jury's verdict.'" *Id.* " 'In determining whether the misdirection likely affected

the jury's verdict, an appellate court will be more inclined to reverse in cases where the erroneous instruction did not merely allow a wrong word or some other ambiguity to exist, but excused the State from its burden of proof on a contested element of the crime.'" *Id.*

■■■■■ Here, the Amended Information charged that Appellant "committed the class A misdemeanor of resisting arrest" in that Sergeant Stewart, "a law enforcement officer, was making an arrest for [a][m]unicipal warrant, and [Appellant] knew that the officer was making an arrest, and, for the purpose of preventing the officer from effecting the arrest, resisted the arrest ... by fleeing from the officer." Instruction No. 9, the verdict directing instruction on resisting arrest then stated:

[a]s to Count II, if you find and believe from the evidence beyond a reasonable doubt:

First, that on or about [the] 19th day of June, 2007, ... [Officer] Rogers and [Corporal] Waynick were law enforcement officers,

Second, that [Officer] Rogers and [Corporal] Waynick were making an arrest of [Appellant] for failure to appear, and

Third, that [Appellant] knew or reasonably should have known that a law enforcement officer was making an arrest of [Appellant], and

Fourth, that for the purpose of preventing the law enforcement officer from making the arrest, [Appellant] resisted arrest by fleeing from the officer,

then you will find [Appellant] guilty under Count II of resisting arrest.

failed to comply with this portion of Rule 84.04; however, such deficiencies are not fatal to this particular appeal and we shall

address this point *ex gratia.* All rule references are to Missouri Court Rules (2007).

There is no doubt that a variance existed in this case between the Amended Information and Instruction No. 9 which was given to the jury. However, instructing the jury upon one form of the offense after the information charges a different form of the offense does not require reversal in every case. *Darden*, 263 S.W.3d at 764; *see State v. Glass*, 136 S.W.3d 496, 520 (Mo. banc 2004). "For a variance to be fatal, i.e., requiring reversal, the instruction must submit a new and distinct offense from that charged in the information." *State v. McCullum*, 63 S.W.3d 242, 252 (Mo.App.2001). In determining if a variance is fatal, "[a]s a general rule, 'it is necessary to determine whether the variance between the information and instruction was material and whether the variance prejudiced the substantial rights of the defendant. . . .'" *State v. Condict*, 65 S.W.3d 6, 16 (Mo.App.2001) (quoting *State v. Lee*, 841 S.W.2d 648, 651 (Mo. banc 1992)). "'A variance is material when it affects whether an accused received adequate notice from the information. A variance is prejudicial when it affects the defendant's ability to adequately defend against the charges presented in the information and given to the jury in the instruction.'" *McCullum*, 63 S.W.3d at 252 (quoting *State v. Jones*, 892 S.W.2d 737, 739 (Mo.App.1994)). "'Unless the defendant can be said to have been prejudiced in that he would have been better able to defend had the information contained the phrase [complained of], he should not be entitled to relief on account of the variance.'" *Darden*, 263 S.W.3d at 763–64 (quoting *Lee*, 841 S.W.2d at 650).

Here, Appellant "does not claim the variance in this case affected his trial strategy or otherwise prejudiced his defense. Nor do we find so from the record." *State v. Goss*, 259 S.W.3d 625, 627–28 (Mo.App. 2008). Further, Appellant does not challenge the sufficiency of the evidence to support his conviction for resisting arrest either as charged in the Amended Information or as submitted in Instruction No. 9.

In the present case, it is clear from the record that the parties involved all understood that Appellant was charged with resisting arrest in relation to the incident in the early morning hours of June 20, 2007, when he fled from Corporal Waynick and Officer Rogers through a residential area and was subsequently apprehended in the bushes of a home.

At trial, in its opening statement, the State specifically referred to the chase involving Officer Rogers and Corporal Waynick; during trial the State elicited testimony from both officers about that particular pursuit; and the State mentioned in closing argument that it was Officer Rogers and Corporal Waynick from whom Appellant fled. Further, defense counsel cross-examined both Corporal Waynick and Officer Rogers about their chase of Appellant and their apprehension of him. Defense counsel even specifically asked Officer Rogers if the "basis of the resisting charge is the fact that [Appellant] is claiming, with his hands down or clutched up under his side like this, saying I didn't do anything, that was resisting, that alone gave you the basis for resisting."

Additionally, there was nothing in the record in relation to Appellant fleeing from Sergeant Stewart. When Sergeant Stewart encountered Appellant, he pursued the two individuals who had been standing with Appellant near Mason's Bar while Officer Rogers pursued Appellant. Appellant has failed to establish that the variance was material or prejudicial. He fully litigated the issue of whether he was guilty of resisting arrest for his action on the evening of June 19, 2007, and has not

demonstrated that a manifest injustice or a miscarriage of justice occurred. Accordingly, his claim does not rise to the level of plain error. Point II is denied.

The judgment and sentence of the trial court is affirmed.

BATES, P.J., and BURRELL, J., concur.