

# Missouri Court of Appeals

### Southern District

### Division One

STATE OF MISSOURI, )
)
            Respondent, )
)
  vs. ) No. SD32672
) Filed: October 16, 2014
CODY N. DOUBENMIER, )
)
            Appellant. )

### APPEAL FROM THE CIRCUIT COURT OF CAMDEN COUNTY

Honorable G. Stanley Moore, Circuit Judge

### **AFFIRMED**

A jury convicted Cody N. Doubenmier ("Doubenmier") of the unclassified felony of enticement of a child (Count I), in violation of section 566.151; and the class D felony of sexual misconduct (Count II), in violation of section 566.083.[1]  Doubenmier was sentenced as a prior offender to eight years for Count I and four years for Count II, to run concurrent with each other and to any other offenses.  Doubenmier alleges eight points of trial court error.  Finding no merit to Doubenmier's claims, we affirm the judgment of the trial court.

---

[1] Section 566.151 refers to RSMo Cum.Supp. 2006, and section 566.083 refers to RSMo Cum.Supp. 2008.  All other statutory references are to RSMo 2000, unless otherwise indicated.

**Facts and Procedural Background**

Doubenmier contests the sufficiency of the evidence to support his convictions. We review the evidence in the light most favorable to the jury's verdict, rejecting all contrary evidence and inferences. *See State v. Newberry*, 157 S.W.3d 387, 390 (Mo.App. S.D. 2005).

In November 2011, a fifteen-year-old high school student ("victim") received text messages from Doubenmier, who said that he had gotten victim's phone number from her ex-boyfriend. Victim testified she told her grandmother and mother about the text messages because she "was getting creeped out because he was just really weird while we were texting." Doubenmier texted that he knew victim's father was a cop and that he could get in trouble for talking to her. Doubenmier also sent two pictures of himself to victim—he was shirtless in one of the pictures.

Victim's father, a Camden County deputy sheriff, was told about the texts. Victim's father took victim's phone to John Stephens ("Detective Stephens"), the assistant chief of detectives for the Camden County Sheriff's Office, and asked his opinion on whether anything should be done. Detective Stephens was concerned about the content of some of the text messages, specifically those where Doubenmier asked victim if she had done things with an older man and if she wanted to spend time with him. Doubenmier's messages also discussed the possibility of meeting victim. Detective Stephens determined the text messages should be investigated and he contacted the State Technical Assistance Team ("STAT") in Jefferson City.[2]

Investigator Cory Stoff ("Stoff"), a 26-year law enforcement veteran, was assigned the case. Stoff conducted undercover operations by posing as a fourteen-year-old girl named Allyson Chambers ("Ally"). Stoff created a Facebook account for Ally and used pictures of a

---

[2] A law enforcement agency attached to the Missouri Division of Social Services that investigates crimes against children.

2

young-looking female police officer. He used a department-issued cell phone to communicate in the Ally persona.

At the time of the initial phone call between Detective Stephens and Stoff, Doubenmier texted victim and asked if she knew any other girls that might be interested in him. Stoff instructed Detective Stephens to send a response to Doubenmier, from victim's phone, indicating she did not want to talk to Doubenmier any more, but that her friend Ally had seen his picture and thought he was cute. The message included Stoff's cell phone number. Doubenmier contacted Stoff about fifteen minutes after the message was sent.

Stoff, posing as Ally, asked Doubenmier who he was and how old he was. Doubenmier sent a reply message asking Ally where she lived, her age, and what she was looking for. Stoff relayed that information to Doubenmier, and Doubenmier replied that he could get in trouble for talking to her. After exchanging text messages for a few minutes, Doubenmier then asked Ally to send him some sexy pictures. Doubenmier said he would also send pictures, but cautioned Ally the pictures would need to be deleted from their phones so no one would find them. Stoff sent some pictures of the female officer to Doubenmier.

The following day, Doubenmier and Stoff had another exchange of text messages. Doubenmier asked Ally what type of pictures she wanted, and Stoff replied, "[A]ll kinds." Doubenmier responded by saying, "[O]h yea, you can't see my good pics, you're too young, hahaha na just joking." Doubenmier asked Ally if she wanted to see a "bad picture." Stoff replied, "Sure" and Doubenmier sent a picture of a penis. Doubenmier asked Ally if she liked the picture, and said the penis was "seven inches and as big around as a silver dollar[.]" Doubenmier asked Ally if "that would work" and wrote, "[Y]ou want to hold it, don't you."

In subsequent days, Doubenmier sent texts to Ally indicating they should get together. Specifically, he stated that since she had seen his "package" she should come to Camdenton to see him. In one message, Doubenmier stated that if he had the money, he would come to her location and get a motel room.

After Stoff accumulated enough information for an arrest, he contacted Detective Stephens. Detective Stephens then obtained search and arrest warrants for Doubenmier and Doubenmier was located, arrested, and taken to the Camden County Sheriff's Department where he was read and waived his *Miranda*[3] rights. Doubenmier initially told Stoff that he was asking victim, whom he described as his friend, to set him up with girls he believed to be in their 20s, but who turned out to be only fifteen-to-seventeen years old. When asked if he remembered sending a picture of a penis to Ally, Doubenmier hesitated for a minute then put his head down and said, "I may have."

At the end of the interview, Stoff asked Doubenmier if he wanted to write out an apology to Ally or her parents, or to the fifteen-year-old girl and her parents. Doubenmier said that he did and Stoff gave him pencil and paper and left the room. Doubenmier knocked on the door a few minutes later and said he did not really want to write an apology. He also said that he had written out a statement and then tore it up and threw it in the trash can. Doubenmier then asked for an attorney, at which point all questioning ceased and Doubenmier was returned to the detention area. Before removing Doubenmier from the interrogation room, Detective Stephens asked Doubenmier if he had everything he wanted to take back with him to the detention area and Doubenmier replied, "[Y]es." Stoff then retrieved Doubenmier's torn-up note from the trash can after Doubenmier was returned to the detention area.

---

[3] *Miranda v. Arizona*, 384 U.S. 436 (1966).

4

On September 4, 2012, before trial was to commence, a first amended information was filed charging Doubenmier with the felony enticement of a child (Count I), in violation of section 566.151, for the purpose of engaging in sexual conduct with a person less than fifteen years of age; and the class D felony of sexual misconduct involving a child by indecent exposure (Count II), in violation of section 566.083, by knowingly exposing his genitals to a child less than 15 years of age for the purpose of arousing Doubenmier's sexual desire. Doubenmier was also charged as a prior offender.

At trial, victim's parents, Detective Stephens, and Stoff all testified. Stoff confirmed he retrieved Doubenmier's apology note from the trash can in the interrogation room after Doubenmier changed his mind about writing the note and requested an attorney. This testimony, and Doubenmier's apology note, was admitted into evidence without objection.

Michael Gray, an investigator for STAT, whose job it was to examine computers and cell phones for data, testified as to the photos and text messages retrieved from Doubenmier's phone. He confirmed the cell phone he examined belonged to Doubenmier, and also confirmed Stoff's number appeared 200 times "in the chat" he was able to get "from [Doubenmier]'s phone." Doubenmier's cell phone also contained numerous pictures, four of which were marked as exhibits and admitted into evidence.

Following Gray's testimony, the State rested its case. Doubenmier did not testify or present any evidence, but filed a "Motion for Judgment of Acquittal at the Close of State's Evidence." During argument, Doubenmier's counsel contended that in Count I, the State "failed to establish that [Doubenmier] did anything that he did for the purpose of engaging in sexual conduct with a person less than 15 years of age." As to Count II, Doubenmier's counsel argued that there was no evidence or any witness who could testify that "the penis depicted in State's

5

Exhibit Number 7 was [Doubenmier]'s penis and that [was] an essential element of sexual misconduct involving a child through indecent exposure that [Doubenmier] exposed his genitals." The State argued that the text message Doubenmier sent to Ally shortly after the picture was sent asking if she wanted to hold his penis established the essential elements of both Count I and Count II. Premising its ruling on the *Hall*[4] case, the trial court overruled Doubenmier's motion for acquittal.

A jury instruction conference was then held. Doubenmier's counsel objected to Instructions 6[5] and 9[6] in that both were modified and contained the language: "[i]t is no defense

---

[4] *State v. Hall*, 321 S.W.3d 453 (Mo.App. S.D. 2010) (holding that a police officer masquerading as a child is not a defense to enticement of a child under §§ 566.083 & 566.151).

[5]

INSTRUCTION No. 6

As to Count One, if you find and believe from the evidence beyond a reasonable doubt:
First, that on or about November 9, 2011 and November 10, 2011, in the County of Camden, State of Missouri, the defendant enticed a minor female known as Ally by requesting a sexy picture, by sending three pictures of himself including a picture of his penis, by asking if the minor female known as Ally wanted to hold his penis and by asking, "Do you want to come see me now that you've saw my package?", and
Second, that the defendant did so for the purpose of engaging in sexual conduct with a minor female known as Ally, and
Third, that at that time, the minor female known as Ally was less than fifteen years of age, and
Fourth, that it was the defendant's purpose to have sexual conduct with a person less than fifteen years of age, and
Fifth, that defendant was twenty-one years of age or older, and
Sixth, that defendant was not entrapped as submitted in Instruction No. 8, then you will find the defendant guilty under Count One of enticement of a child under this instruction.
However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.
*It is no defense to a prosecution for the offense of enticement of a child that the other person was a peace officer masquerading as a minor.*
As used in this instruction, "sexual conduct" means sexual intercourse, deviate sexual intercourse or sexual contact.
As used in this instruction, the term, "sexual contact" means any touching of another person with the genitals or any touching of the genitals or anus of another person, or the breast of a female person, or such touching through the clothing, for the purpose of arousing or gratifying sexual desire of any person.

(Emphasis added.)

6

to a prosecution . . . that the other person was a peace officer masquerading as a minor[,]" because the language did not appear in the Missouri Approved Instructions ("MAI-CR"). The State acknowledged that it is presumed error to vary from MAI-CR, but the presumption could be overcome because the instructions contained the language from the applicable statute. The trial court agreed and again relying on **Hall**, overruled Doubenmier's objections to Instructions 6 and 9.

The jury found Doubenmier guilty on Count I, enticement of a child as submitted in Instruction 6, and on Count II, sexual misconduct involving a child by indecent exposure as submitted in Instruction 9.

Doubenmier includes eight points on appeal, which we combine for ease of analysis. Doubenmier argues that: (1) the trial court erred in failing to grant Doubenmier a judgment of acquittal for enticement of a child at the close of the State's evidence; (2) the trial court erred in failing to grant Doubenmier a judgment of acquittal on both counts on the basis that he was

---

[6]

INSTRUCTION No. 9

As to Count Two, if you find and believe from the evidence beyond a reasonable doubt:

First, that on or about November 10, 2011, in the County of Camden, State of Missouri, the defendant knowingly exposed his genitals to a minor female known as Ally, and

Second, that defendant did so for the *purpose of arousing the sexual desire of the minor female known as Ally*, and

Third, at that time a minor female known as Ally was 14 years old, and

Fourth, that the defendant knew the minor female known as Ally was less than fifteen years of age,

Fifth, that defendant was not entrapped as submitted in Instruction No. 11, then you will find the defendant guilty under Count Two of sexual misconduct involving a child by indecent exposure under this instruction.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

*It is no defense to a prosecution for the offense of sexual misconduct involving a child by indecent exposure that the other person was a peace officer masquerading as a minor.* The provisions of this instruction shall apply regardless of whether the person exposed his genitals in person or via the Internet or other electronic means.

(Emphasis added).

7

entrapped by law enforcement; (3) the trial court erred in submitting Instructions 6 and 9 with non-MAI-CR language; (4) the trial court plainly erred in allowing a variance between the amended information and Instruction 9; (5) the trial court plainly erred by admitting Doubenmier's apology note, State's Exhibit 8; and (6) the trial court plainly erred by permitting testimony that Doubenmier invoked his right to silence and requested an attorney.

The issues for our determination are:

1.      Was Doubenmier entitled to a judgment of acquittal at the close of the State's evidence?

2.      Did the trial court err in submitting Instructions 6 and 9 with the non-MAI-CR language "[i]t is no defense to a prosecution . . . that the other person was a peace officer masquerading as a minor"?

3.      Did the trial court plainly err in allowing a variance between the amended information and Instruction 9?

4.      Did the trial court plainly err in admitting Doubenmier's apology note, State's Exhibit 8?

5.      Did the trial court plainly err in permitting testimony that Doubenmier invoked his right to silence and requested an attorney?

### Points I, II, and III: Doubenmier Was Not Entitled to a Judgment of Acquittal

### Standard of Review

Our review "of the sufficiency of the evidence is limited to whether the State has introduced sufficient evidence for any reasonable juror to have been convinced of the defendant's guilt beyond a reasonable doubt." *State v. Nash*, 339 S.W.3d 500, 508-09 (Mo. banc 2011).

> This is not an assessment of whether the Court believes that the evidence at trial established guilt beyond a reasonable doubt but rather a question of whether, in light of the evidence most favorable to the State, any rational fact-finder could have found the essential elements of the crime beyond a reasonable doubt.

8

*Id.* at 509 (internal quotation and citation omitted). "In reviewing the sufficiency of the evidence, all evidence favorable to the State is accepted as true, including all favorable inferences drawn from the evidence. All evidence and inferences to the contrary are disregarded." *Id.* (internal citation omitted).

"When reviewing the sufficiency of evidence supporting a criminal conviction, the Court does not act as a 'super juror' with veto powers, but gives great deference to the trier of fact." *Id.* (internal quotation and citation omitted). We "will not weigh the evidence anew since the fact-finder may believe all, some, or none of the testimony of a witness when considered with the facts, circumstances and other testimony in the case." *Id.* (internal quotation and citation omitted).

## Analysis

Doubenmier claims in Point I that the trial court erred in failing to grant his Motion for Judgment of Acquittal at the Close of State's Evidence on the charge of enticement of a child because the State's evidence was insufficient to prove that his purpose in communicating with Ally was to engage in sexual conduct. Doubenmier argues that "[n]o addresses were exchanged, and no plans to meet were discussed[,]" and that the text messages between Doubenmier and Ally were "inappropriate sexual 'talk' and nothing more."

Section 566.151.1 provides that a person who is at least twenty-one years of age "commits the crime of enticement of a child if that person persuades, solicits, coaxes, entices, or lures . . . by words, actions or . . . any electronic communication, any person who is less than fifteen years of age for the purpose of engaging in sexual conduct."

Doubenmier texted Ally asking her where she lived, how old she was, and "what [she] was looking for." Ally indicated that she was 14 years old. Doubenmier texted Ally requesting

9

that she "send him some sexy pictures and that he was going to send [Ally] some and make sure [they] deleted them off [their] phones so nobody found out." In response, Ally sent four pictures—depicting a female police officer.

The next day, Doubenmier asked Ally what kind of pictures she wanted of him and Ally replied, "[A]ll kinds." Doubenmier responded, "oh yea, you can't see my good pics, you're too young, hahaha na just joking." Doubenmier then sent Ally a photo showing the tip of a penis set against a measuring tape, and claimed the penis was his. He followed up by saying his penis was "seven inches and as big around as a silver dollar[,]" and asking if "that would work" for Ally. He asked Ally if she liked the picture and whether she wanted to hold his penis. Doubenmier then said "yea, Camdenton, you wanna to come see me now, you saw my package?" In another message, Doubenmier told Ally that if he had the money he would come to her location and get a motel room.

Doubenmier's contention that the absence of an agreed-upon time and place to meet Ally rendered these communications mere "inappropriate sexual talk" outside the bounds of section 566.151, ignores prior case law interpreting section 566.151. The defendant in ***State v. Fleis***, 319 S.W.3d 504 (Mo.App. E.D. 2010), made similar general comments about sexual activities and wanting to meet with "Kayla," a person he thought was a fourteen-year-old girl. ***Id.*** at 506.

> The court found that the defendant's
>
> sexual communications, along with [his] communications about the two meeting, provide sufficient evidence from which a jury could find beyond a reasonable doubt that [his] purpose in communicating with 'Kayla' was to entice her, believing her to be less than fifteen years old, to meet him for purposes of engaging in sexual conduct, and that this communication was a substantial step toward commission of the offense.

*Id.* at 509. The court explicitly noted defendant taking his "communications a step further" and setting up and driving to a meeting with Kayla was "not required for a conviction" under section 564.011, but was merely "additional evidence." *Id.* at 509-10.

Doubenmier's sexual communications, along with his references to meeting with Ally, despite the fact that Doubenmier and Ally never agreed on a time and place to meet, were sufficient evidence from which a jury could infer and find beyond a reasonable doubt that Doubenmier's purpose in communicating with Ally was to entice her to meet him for purposes of engaging in sexual conduct, and that these communications were a substantial step toward commission of the offense. *Id.* There was substantial evidence to support the guilty verdict for enticement of a child.

Doubenmier claims in Points II and III that the State's evidence was insufficient on both counts to establish beyond a reasonable doubt that he was not entrapped by law enforcement.

Under section 562.066, "[i]t is the defendant's initial burden to go forward with evidence showing both unlawful governmental inducement and his own lack of predisposition." *State v. Mitchell*, 897 S.W.2d 187, 191 (Mo.App. S.D. 1995). "The State then has the burden of proving lack of entrapment beyond a reasonable doubt which it may do by rebutting either defendant's evidence of inducement or by showing his predisposition." *Id.* at 192.

Evidence of defendant's previous conduct, similar to the crime charged, can provide sufficient evidence of predisposition to engage in the charged crime to negate the defense of entrapment. *See id.* at 192 (defendant's prior use, possession, sale, or ability to supply drugs on request is evidence of a predisposition to sell drugs sufficient to negate the defense of entrapment).

11

Prior to any arguable inducement by law enforcement, Doubenmier obtained the phone number of a fifteen-year-old girl from her ex-boyfriend, told her that he knew her father was a police officer and that he could get into trouble for talking with her, sent a shirtless picture of himself, sent implicitly sexual messages, and discussed the possibility of meeting. In his first texting conversation with Ally, lasting approximately 30-40 minutes, after learning that Ally was 14 years old, Doubenmier asked Ally to send him some "sexy pictures," said he would be sending some sexy pictures to her, and that the two should delete the pictures off their phones so that no one would find them. This is sufficient evidence of predisposition to negate the defense of entrapment.

The jury was free to believe (and apparently did believe) that these text messages showed that Doubenmier was predisposed to commit the crimes charged. There was substantial evidence to support the jury's verdict that Doubenmier was not entrapped. Doubenmier was not entitled to a judgment of acquittal at the close of the State's evidence. Points I, II and III are denied.

### *Points IV and V: Doubenmier Suffered No Prejudice*
### *From Verdict-Directing Instructions*

### Standard of Review

"On claims of instructional error, an appellate court will reverse only if there is error in submitting an instruction and prejudice to the defendant. MAI instructions are presumptively valid and, when applicable, must be given to the exclusion of other instructions." ***State v. Forrest***, 183 S.W.3d 218, 229 (Mo. banc 2006) (internal quotation and footnote omitted).

### Analysis

Doubenmier argues in Points IV and V that the trial court erred in submitting Instructions 6 and 9 because both instructions contained the following non-MAI-CR language: "It is no defense to a prosecution . . . that the other person was a peace officer masquerading as a minor."

"On a claim of instructional error, this Court will reverse only if there is both error in submitting an instruction *and* resulting prejudice to the defendant." ***State v. Dismang***, 151 S.W.3d 155, 164 (Mo.App. S.D. 2004) (emphasis added). An instruction which is an "accurate statement of law and supported by the evidence" does not prejudice the defendant. ***State v. Avery***, 275 S.W.3d 231, 233 (Mo. banc 2009).

In support of his claim that the non-MAI-CR language in the instructions was prejudicial, Doubenmier argues that the instructions "prejudice[d] [Doubenmier] in the eyes of the jury by lowering, in their minds, the standard of proof to be required of the prosecuting attorney." Doubenmier does not explain or cite authority for this proposition.

Doubenmier further argues that the instructions may lead the "jury . . . to believe that if an officer is masquerading as a minor, then entrapment is not a defense." Such an interpretation would be contrary to any reasonable reading of the instructions, and this argument is therefore unpersuasive.

The instructions were an accurate statement of the law, and when read in combination with the other instructions, the jury was properly informed. *See* ***Hall***, 321 S.W.3d at 456 (interpreting § 566.083.3). Doubenmier was not prejudiced by the instructions. *See* ***Anderson***, 306 S.W.3d at 536 ("The State . . . met its burden to demonstrate no prejudice occurred because the instruction did not misstate the law, and, when read in combination with the other instructions, the jury was properly informed about how to consider mitigating evidence."). The trial court did not commit reversible error in submitting Instructions 6 and 9 with the non-MAI-CR language "it is no defense to a prosecution . . . that the other person was a peace officer masquerading as a minor." Points IV and V are denied.

13

*Points VI, VII and VIII: The Trial Court Did Not Plainly Err*

**Standard of Review**

Issues that were not preserved may be reviewed for plain error only, which requires the reviewing court to find that manifest injustice or a miscarriage of justice has resulted from the trial court error. Review for plain error involves a two-step process. The first step requires a determination of whether the claim of error facially establishes substantial grounds for believing that manifest injustice or miscarriage of justice has resulted. All prejudicial error, however, is not plain error, and plain errors are those which are evident, obvious, and clear. If plain error is found, the court then must proceed to the second step and determine whether the claimed error resulted in manifest injustice or a miscarriage of justice.

*State v. Baumruk*, 280 S.W.3d 600, 607-08 (Mo. banc 2009) (internal quotations and citations omitted). "The defendant bears the burden of showing not only that plain error occurred, which resulted in manifest injustice or a miscarriage of justice, but also that the error was outcome-determinative." *State v. Steinmann*, 431 S.W.3d 495, 503 (Mo.App. E.D. 2014) (internal quotation and citation omitted).

**Analysis**

Doubenmier claims plain error because the first amended information alleged he exposed his genitals to Ally for the purpose of arousing his own sexual desire, while Instruction 9 posited that he exposed his genitals for the purpose of arousing Ally's sexual desire. We have reviewed the record and find no evident, obvious, and clear error amounting to an outcome-determinative manifest injustice or miscarriage of justice on this ground. The identity of the person for whose gratification or arousal Doubenmier was acting was not an element of the crime charged under 566.083.1(2), and Doubenmier's ability to defend against the crime of which he was convicted therefore was not hampered by the variance. *See State v. Fowler*, 938 S.W.2d 894 (Mo. banc 1997); *State v. Lemons*, 294 S.W.3d 65, 72 (Mo.App. S.D. 2009).

14

Doubenmier also argues that the trial court plainly erred in admitting State's Exhibit 8, an apology note Doubenmier tore up and threw in a trash can at the end of his police interview, suggesting that the note was not a statement because Doubenmier destroyed it, and even if it was a statement, its admission violated his right to silence because he had invoked his right to remain silent before the note was retrieved by Stoff. When the apology note was offered into evidence, counsel for Doubenmier affirmatively stated, "No objection, judge." We are therefore precluded from reviewing this point even for plain error. *See State v. Williams*, 411 S.W.3d 275, 277 (Mo.App. S.D. 2013).

Doubenmier further argues the trial court plainly erred in allowing testimony from Stoff that Doubenmier invoked his right to silence and to an attorney. The trial court did not plainly err in failing to *sua sponte* exclude and instruct the jury to disregard testimony heard without objection by Doubenmier. There is also evidence in the record that shows Doubenmier's guilt was otherwise clear even without evidence of his invocation of his right to silence and to an attorney. *State v. Frazier*, 927 S.W.2d 378, 382 (Mo.App. W.D. 1996). We find no evident, obvious, and clear error amounting to an outcome-determinative manifest injustice or miscarriage of justice on this ground.

The trial court did not plainly err in allowing variance between the amended information and Instruction 9, by admitting Doubenmier's apology note, or the invocation of his right to silence. Points VI, VII and VIII are denied.

For the reasons stated herein, the judgment of the trial court is affirmed.

WILLIAM W. FRANCIS, JR., C.J./P.J. - OPINION AUTHOR

JEFFREY W. BATES, J. - Concurs

DANIEL E. SCOTT, J. - Concurs

15