**STATE of Missouri, Respondent,**

v.

**Alyssa A. OUDIN, Appellant.**

**No. WD 74885.**

Missouri Court of Appeals,
Western District.

July 23, 2013.

Chris Koster, Attorney General, Evan J. Buchheim, Assistant Attorney General, Jefferson City, MO, for Respondent.

Laura G. Martin, District Defender, Kansas City, MO, for Appellant.

Before Division Two: THOMAS H. NEWTON, Presiding Judge, and MARK D. PFEIFFER and KAREN KING MITCHELL, Judges.

KAREN KING MITCHELL, Judge.

Alyssa Oudin appeals her convictions for first-degree assault, pursuant to section 565.050.1, and armed criminal action, pursuant to section 571.015,[1] imposed following a jury trial, and for which she was sentenced to consecutive terms of twelve and three years' imprisonment, respectively. Oudin argues that the trial court plainly erred in submitting an outdated version of the MAI–CR defense-of-others instruction. But because Oudin offered the same outdated version during the instruction conference, she may not now complain. We affirm.

## Factual Background

On June 28, 2010, teenager Joshua Sexton was hanging out at San Rafael Park with his brother and a friend. When Sexton left to walk back to his home nearby, Robert McGaugh[2] approached him from behind, held a knife to his throat, and demanded everything of value Sexton had on him. Pursuant to McGaugh's direction, Sexton threw his wallet on the ground, and Oudin approached, picked up the wallet, thanked Sexton, and returned his ID.[3] McGaugh, Oudin, and Oudin's sister (Sister) left the park,[4] while Sexton ran back to his brother and friend to report what had happened.

Sexton's brother contacted their parents and friends for help finding McGaugh and Oudin for the purpose of retrieving Sexton's money. One of Sexton's friends, Jason Monteer, heard that McGaugh had been at a nearby house, bragging about robbing someone and getting $50.00. After receiving this information from Monteer, Sexton and his brother joined their father (Victim), along with Monteer and Michael "Dustin" Vacha, to search the neighborhood for McGaugh.

At some point, after discovering that people were looking for them, Oudin, Sister, and McGaugh tried to leave the neighborhood, and, when they saw Victim's truck, with Sexton, his brother, Monteer, and Vacha in it, they hid. Sister eventually got tired of hiding, so she began to walk along the street.

Sexton's group had given up searching for McGaugh, so they dropped off Monteer and Vacha and began heading back to the park to call the police. Right after dropping off Monteer and Vacha, Sexton noticed a girl he thought was Oudin walking along the street; he then alerted Victim, who immediately stopped his vehicle in the middle of the street. At that point, McGaugh jumped out from underneath a nearby vehicle and began to run. Victim chased after McGaugh, while Oudin and

1. All statutory references are to the Missouri Revised Statutes (2000), as updated through the 2009 Cumulative Supplement, unless otherwise noted.

2. McGaugh was dating Oudin's sister, Amanda Oudin, at the time.

3. Oudin was charged with first-degree robbery under an accomplice-liability theory for her involvement in the robbery, but the jury acquitted her of this charge.

4. According to Oudin's evidence at trial, she, McGaugh, and Sister had just been kicked out of her mother's home after Sister discovered she was pregnant with McGaugh's child, and they went to the park because they had nowhere else to go.

Sister remained on the street. Sexton and his brother began to follow Victim, but they were stopped by Oudin and Sister. Sister advised Sexton that he "needed to call [his] boy off or she was going to put a bullet in [Sexton's] head." At the same time, Sister was holding her purse in such a way as to imply she had a gun inside it. Fearing that the threats were true, Sexton and his brother retreated to Victim's truck.

Victim eventually gave up chasing McGaugh and headed back toward his vehicle. As he was doing so, he encountered Oudin and Sister. At this point, the evidence was undisputed that Sister threatened to shoot Victim while reaching into her purse, Victim grabbed Sister's arms between the shoulder and elbow, Oudin stabbed Victim once in the back, and Victim released his hold on Sister.

The events leading up to and surrounding these facts were hotly contested at trial. The State's evidence demonstrated that Sister and Oudin approached Victim first, while Oudin's evidence demonstrated that Victim approached them first. The State's evidence demonstrated that Victim grabbed Sister's arms merely to prevent her from carrying out her threat to shoot him, while Oudin's evidence demonstrated that Victim not only grabbed Sister's arms but also choked her repeatedly, leaving finger marks, and began to drag her away. Oudin testified, "it looked like he was trying to take her out of the area away from me." Victim testified that he never hit or choked Sister and that his only purpose in grabbing her arms was "to keep her from drawing a gun, as she had intentionally said." The State's evidence demonstrated that Oudin approached Victim from behind

while he was struggling with Sister, stabbed him in the back, and then swung the knife at him several more times, apparently attempting to stab him, without success. Oudin's evidence, however, indicated that Oudin threatened and warned Victim to release Sister before she ultimately jumped over Sister (who was between Victim and Oudin) and stabbed him in the back because Victim continued to choke Sister.

As a result of the stab wound, Victim spent twenty-two days in the hospital, underwent two surgeries, and recovered only 40% capacity in the lung pierced by the knife.

After the stabbing, Oudin, Sister, and McGaugh devised a plan to tell the police that they had been swimming and had nothing to do with either the robbery or the stabbing. They went so far as to jump into a public pool and then contact the police to turn themselves in. Despite their original plan, both Oudin and Sister eventually admitted their presence and involvement with the robbery and stabbing.[5]

At trial, Oudin argued that her conduct against Victim was justified because she stabbed Victim in defense of Sister. During the instruction conference, the court indicated that it was accepting the State's proffered defense-of-others instruction, patterned after MAI–CR 3d 306.08. The court also noted that "a similar instruction had been submitted by defendant." In fact, Oudin's proffered instruction was also patterned after MAI–CR 3d 306.08, but her version differed from the State's in that her version omitted language regarding the effect of the lawfulness of Victim's conduct.[6] The court asked Oudin's coun-

---

5. Though Sister acknowledged planning the robbery before it occurred, both Oudin and McGaugh testified that the robbery was a spur-of-the-moment decision of McGaugh's

alone and that no one else knew what he planned to do.

6. The MAI–CR 3d Notes on Use provide for a modification of 306.08 when there is evidence

sel, "with regard to this one in particular, is there any objection to the State's submission of this 306.08?" Oudin's counsel responded, "No, Your Honor."

During closing arguments, the State suggested to the jury that Victim's act of grabbing Sister by the arms was a lawful act, done in self-defense to prevent Sister from carrying out her threat to shoot Victim. The State argued that, because Sister had been the initial aggressor in the conflict with Victim, Sister could not have invoked a self-defense justification, and, as a result, Oudin did not have a valid defense-of-others justification. Oudin argued that Victim had been the initial aggressor, and that his acts of choking Sister and dragging her away justified Oudin's act of stabbing him to prevent any harm to Sister.

The jury found Oudin guilty of both first-degree assault and armed criminal action. The jury recommended sentences of twelve and three years' imprisonment, respectively. The court sentenced Oudin in accordance with the jury's recommendation and ordered the sentences to run consecutively. Oudin appeals.

## Standard of Review

■ Oudin's only claim on appeal is that the trial court erred in submitting an outdated version of the MAI–CR defense-of-others instruction to the jury.[7] When the court asked Oudin if she had any objection to the instruction given, however, Oudin affirmatively advised the court that she had no objection. And though she raised a claim of instructional error regarding the defense-of-others instruction in her motion for new trial, it was based upon a different theory than the one she advances on appeal. Furthermore, the defense-of-others instruction Oudin submitted was also patterned after MAI–CR 3d 306.08, rather than MAI–CR 3d 306.08A.

"Counsel shall make specific objections to instructions ... considered erroneous." Rule 28.03.[8] "No party may assign as error the giving or failure to give instructions ... unless the party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection." *Id.* "The objections must also be raised in the motion for new trial in accordance with Rule 29.11." *Id.* Because Oudin failed to meet any of the requirements of Rule

---

that the victim was acting lawfully. "In order for the use of force to be justified in the defense of another person, it must be in response to what appears to be unlawful force being used against the person being protected. If there is evidence that the force or threatened force to which the defendant responded was lawful force and this was apparent to the defendant, the instruction must be modified." MAI–CR 3d 306.08, Notes on Use 3(c). Because the State put on evidence that Victim acted lawfully in response to Sister's threatened use of a gun, the State offered a modified version of MAI–CR 3d 306.08 which inserted the word "unlawful" throughout the instruction before describing Victim's acts. Oudin proposed an unmodified version of MAI–CR 3d 306.08.

7. The defense-of-others instruction submitted to the jury was patterned after MAI–CR 3d 306.08, which was based upon section 563.031, RSMo 2000. Section 563.031, however, underwent a considerable amendment in 2007, which led to a new version of the MAI pattern instruction. MAI–CR 3d 306.08A tracked the new statutory language, and the Notes on Use indicated that it was to be "used for offenses committed on or after August 28, 2007," which was the effective date for the statutory amendment. Although MAI–CR 3d 306.08 did not apply to Oudin's offenses (since they occurred after August 28, 2007), it is still to be used in cases involving offenses committed prior to August 28, 2007.

8. All rule references are to the Missouri Supreme Court Rules (2012), unless otherwise noted.

28.03, she concedes that her claim is not preserved for appellate review. Nevertheless, she asks that we review her claim for plain error pursuant to Rule 30.20.

 " '[I]nstructional error seldom constitutes plain error....' " *State v. Tillman,* 289 S.W.3d 282, 291 (Mo.App.W.D. 2009) (quoting *State v. Darden,* 263 S.W.3d 760, 763 (Mo.App.W.D.2008)). "Instructional error rises to the level of plain error when the appellant demonstrates 'that the trial court so misdirected or failed to instruct the jury as to cause manifest injustice or miscarriage of justice.' " *State v. Stover,* 388 S.W.3d 138, 154 (Mo. banc 2012) (quoting *State v. Cooper,* 215 S.W.3d 123, 125 (Mo. banc 2007)). " 'If a defect is not readily apparent to alert counsel preparing to argue the case, there is very little likelihood that the jury will be confused or misled.' " *State v. Tisius,* 362 S.W.3d 398, 411 (Mo. banc 2012) (quoting *State v. Green,* 812 S.W.2d 779, 787 (Mo. App.W.D.1991)).

## Analysis

 The State argues that Oudin waived appellate review by both failing to comply with Rule 28.03 and submitting an instruction patterned on the same outdated MAI as the given instruction, about which she complains on appeal. The Missouri Supreme Court has indicated that the failure to comply with the mandates of Rule 28.03, while rendering a later claim of instructional error unpreserved, does not waive all appellate review. *State v. Wurtzberger,* 40 S.W.3d 893, 898 (Mo. banc 2001) ("Unpreserved claims of [instructional] error may still be reviewed under Rule 30.20 if manifest injustice would otherwise occur."). Thus, we reject the State's first argument regarding waiver.

 The State's second argument, however, merits more consideration, given that we are statutorily precluded from deeming "the trial, judgment or other proceedings thereon [in a criminal case] ... in any manner affected ... [f]or any error committed at the instance ... of the defendant...." § 545.030.1(16).

The Missouri Supreme Court recently addressed a similar issue in *State v. Bolden,* 371 S.W.3d 802 (Mo. banc 2012). In *Bolden,* the defendant challenged the use of a defense-of-others instruction patterned after the wrong version of MAI. *Id.* at 805.[9] At trial, however, the defense-of-others instruction ultimately given to the jury had been jointly submitted by both the State and the defense. *Id.* On appeal, the defendant argued that the trial court had a duty not only to submit a defense-of-others instruction but also to correct any errors present in the instruction jointly proffered by the parties. *Id.* at 805–06. The Supreme Court rejected the defendant's arguments, holding that

the proffering of an incorrect instruction to the trial court is an invited error by the party who proffered the instruction. It defies logic and the clear directives of Missouri law to allow a defendant to both proffer an instruction to the trial court and to complain that the trial court's submission of that instruction to the jury is reversible error.

*Id.* at 806. The Court further noted that " '[i]t is axiomatic that a defendant may not take advantage of self-invited error or error of his own making.' " *Id.* (quoting *State v. Mayes,* 63 S.W.3d 615, 632 n. 6 (Mo. banc 2001)). The Court determined that, by requesting the trial court to submit the very instruction forming the basis

---

9. It appears that the submitted instruction in *Bolden* was patterned after the current version, MAI–CR 3d 306.08A, but because of the date of Bolden's charged offenses, the jury should have been instructed based upon the prior version, MA I–CR 3d 306.08.

for her complaint on appeal, "she waived appellate review of the trial court's submission of that instruction to the jury." *Id.* The Court recognized that "[a]lthough plain error review is discretionary, th[e] Court w[ould] not use plain error to impose a *sua sponte* duty on the trial court to correct Defendant's invited errors." *Id.*

Here, Oudin's proffered defense-of-others instruction was rejected in favor of the State's version. Her complaint, however, is that the instruction given was patterned on an outdated version of MAI, which happens to be the same version upon which her proffered instruction was patterned. Thus, despite the fact that her instruction was rejected in favor of the State's, the rationale of *Bolden* applies. Had the court rejected the State's version in favor of Oudin's, the same problem about which she complains on appeal would be present. The combination of Oudin's failure to object to the instruction given and her submission of an instruction containing the same alleged error results in waiver of her claim on appeal.[10]

Point denied.

## Conclusion

Because Oudin submitted an instruction containing the same error about which she complains on appeal, her claim is waived. Therefore, her convictions and sentences are affirmed.

THOMAS H. NEWTON, Presiding Judge, and MARK D. PFEIFFER, Judge, concur.

---

**10.** We recognize that, in *State v. Celis–Garcia*, 344 S.W.3d 150, 154 n. 3 (Mo. banc 2011), the Missouri Supreme Court refused to apply waiver where the defendant submitted an instruction that was ultimately refused but nevertheless "suffered from the same defect she ... challenge[d] on appeal." But we find *Celis–Garcia* distinguishable from Oudin's situation. In *Celis–Garcia*, the instructions submitted by both the State and the defendant complied with MAI, but the applicable MAI was determined to be in conflict with the Missouri Constitution. *Id.* at 157–58. By failing to object to the MAI-compliant instruction, the defendant failed to preserve her claim on appeal, subjecting it to plain error review. *Id.* at 154. But because the defendant *submitted an MAI-compliant instruction*, *id.* at 154 n. 3, 157, she did not create or commit any error that would result in *waiver* of her claim on appeal. Oudin, however, submitted an instruction that *failed* to comply with the MAI Notes on Use. Thus, unlike the defendant in *Celis–Garcia*, Oudin *did* create or commit an error, and, as noted in *Bolden*, " '[i]t is axiomatic that a defendant may not take advantage of self-invited error or error of his own making.' " *Bolden*, 371 S.W.3d at 806 (quoting *Mayes*, 63 S.W.3d at 632 n. 6). Thus, we read *Celis–Garcia* and *Bolden* together to mean that, where a defendant submits a faulty instruction, the defendant waives appellate review as to the specific defect presented in the proffered instruction, regardless of whether the court ultimately uses the proffered instruction or the State's version containing the same defect.