

# Missouri Court of Appeals

## Southern District

## Division One

STATE OF MISSOURI,      )
     )
       Plaintiff-Respondent,      )
     )
vs.      )      No. SD32293
     )      Filed: February 18, 2014
BOBBY GLEN ROST,      )
     )
       Defendant-Appellant.      )

### APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY

Honorable Thomas E. Mountjoy, Circuit Judge

### **AFFIRMED**

A jury found Bobby Glen Rost ("Rost") guilty of assault in the second degree and armed criminal action, and the trial court sentenced him as a prior and persistent offender to twelve years in the Department of Corrections for each offense with the sentences to run concurrently with any existing sentences. Rost appeals on the sole ground that the "trial court plainly erred in failing to *sua sponte* modify" the self-defense instruction requested by the State and given to the jury because "the jury must be instructed on the right to use both deadly and non-deadly force in self-defense" "when there is a dispute whether" deadly or non-deadly force was used.

**Procedural History and Facts**

Rost was charged by information with assault in the first degree and armed criminal action with a dangerous instrument against Jonathan Lorence ("Lorence"). The offenses were based on acts alleged to have occurred on July 19, 2009.

The evidence admitted at trial showed the following. On Saturday, July 18, 2009, Lorence attended a late afternoon-early evening barbecue. Later in the evening, Lorence and some of the others at the barbecue decided to go to downtown Springfield to a "restaurant/bar." Lorence arrived at the restaurant "between 9:30 and 10:00." Lorence drank alcoholic beverages at the barbecue and the restaurant. Lorence and others took a cab downtown in part because they had been drinking alcoholic beverages. Shortly after midnight, Lorence and at least three of the other males in the group left the restaurant on foot to meet Lorence's fiancée at another nearby location.

The State's evidence indicated the following events then occurred. As Lorence was walking across an alley, a Mustang approached from the alley and stopped about one foot from Lorence. Lorence yelled at the driver of the car, the driver of the car "revved its engine up a little bit[,]" the car "kind of jumped . . . and then it took off again" hitting Lorence. Lorence landed on the car's hood and then rolled off the hood onto the ground. The car continued to travel down the alley, but stopped when Lorence again yelled at the driver of the car. The driver then got out of the car, and walked back toward Lorence. The driver and Lorence met near the back of the car, and began "fighting." The alley was "kind of dark" because there were no streetlights in the alley. Lorence "yelled that he'd been stabbed[,]" Lorence's friends went to assist him, and the driver broke away from the fight and returned to the driver's seat in the car. One of Lorence's male friends attempted to break the car's passenger window first with his fist

2

and then with the butt of his pocket knife, but was unsuccessful. The car then drove away. The time period from when the car first approached Lorence, to when the car drove away from the scene, lasted "about a minute." The driver of the car was alone. Afterwards, Lorence's friend found "a cell phone that was laying [sic] on the ground up against the building" in the alley. A police officer arrived "within a minute or two of what had happened."

A female acquaintance of Lorence's was in the alley very near where the car stopped the second time. As the driver emerged from the car, the female friend observed a knife in the driver's right hand. The knife was pointed "down towards the ground." Shortly after seeing that the driver had a knife, the female friend ran away from the scene.

Lorence testified that the driver swung his right arm toward Lorence in "arching swipe[s];" not "punches." Lorence eventually saw "a glint of silver" "[s]ticking out past a fingertip," and realized the driver "had, in fact, been slicing me."

A responding police officer observed Lorence "walking around" with "blood on his left side, and . . . his shirt was cut." The officer took photographs of Lorence's injuries. The photographs showed cuts on Lorence's neck, left chest, and left side. The cut on Lorence's neck was a small cut. The cut on Lorence's left chest was about "3 to 4 inches long[,]" and was "probably the longest cut." The cut on Lorence's left side "looked the most severe." Lorence "didn't want any medical care[,]" and left the scene on foot when the officer left the scene. The officer reported that the cuts "were nonlife-threatening." Lorence testified that the cut on his chest required eight stitches, the cut on his side required seven stitches, and the cut on his neck did not require any stitches. At least one of the cuts left a scar.

The officer was given the cell phone by a person at the scene. The cell phone belonged to Rost. There was no evidence any knife was recovered other than the knife Lorence's male

3

friend used to strike the passenger window of the Mustang. When Rost was interviewed by a detective later in July 2009, Rost said he "hadn't been [at the square] in a while," and the headlights of his Mustang were not working.

At trial, Rost testified as follows. In July 2009, Rost was 51. He was driving his Mustang by himself near the square in Springfield. The Mustang's headlights were working at that time. Rost stopped at a stop sign with the intention of turning right. A large, "loud, obnoxious" group of people were walking past in front of his car. As Rost "was trying to get through th[e] crowd of people[,]" "somebody started yelling, and then somebody started beating on [his] car." People were "all around" Rost's car "and yelling things." Rost started "revving up the motor . . . and just kind of slipping the [manual] clutch just a little bit . . . easing forward"; he was not "trying to hurt" anyone, "but [was] trying to get out of there." Rost eventually got through the crowd and did not believe he hit anyone in the process. He then traveled about one-half block, stopped his car "to see what kind of damage [was] done" to the car, and thought he "was far enough up the road and away from" the crowd.

Rost had been talking on his cell phone, and had the phone in his hand when he exited his car. As he walked to the back of the car "to look around," he "flipp[ed] open" the phone to make a call, heard "people yelling behind [him,]" "turn[ed] around," and was confronted by a "loud, obnoxious [male] flailing his arms around. Next thing [Rost] know[s], we're boxing . . . and then somebody else is there on me too." "[P]eople [were] all over [Rost] and around [him]. [He was] just trying to run and get back in my car and get away from there." Rost did not have a knife, did not know Lorence had been "cut or injured," and did not "deliberately" cut or injure Lorence, but believed there was "a good possibility maybe" that a sharp edge on his watch could have caused Lorence's injuries.

4

Rost testified he felt "threatened from the very beginning" when he was trying to "pull through" the crowd. At the time of the incident, Rost had just recently had "shoulder surgery," and had "a port in [his] chest. Total disability." Rost explained that he did not tell the detective these facts when Rost was interviewed in July 2009

> [b]ecause [the detective] kept asking me about a stabbing at the square, if I was involved in this stabbing, and we didn't have no stabbing. We had no nothing. We had a little conflict. I mean, somebody letting off some steam. I mean, there was nobody hurt.
>
> My car, I didn't call the police on that after I calmed down there in a little bit. So since they're the ones that done that to my car, why would they have called the police? So I really didn't understand exactly what he was talking about.

The jury was instructed on assault in the first degree and the lesser-included offenses of assault in the second degree and third degree. Under the instructions, the only significant difference between assault in the first degree and second degree was that first degree required the jury to find that Rost attempted to cause "serious physical injury" to Lorence, while second degree only required the jury to find that Rost attempted to cause "physical injury" to Lorence. In turn, the jury instructions defined "serious physical injury" to mean "physical injury that creates a substantial risk of death or that causes serious disfigurement or protracted loss or impairment of the function of any part of the body[,]" and "physical injury" to mean "physical pain, illness, or any impairment of physical condition."

The jury also was instructed on self-defense. The instruction given the jury was requested by the State, and read:

> One of the issues as to Count I [assault] is whether the use of force by the defendant against Jonathan Lorence was lawful. In this state, the use of force, including the use of deadly force, to protect oneself is lawful in certain situations.

5

A person can lawfully use force to protect himself against an unlawful attack. However, an initial aggressor, that is, one who first attacks another is not justified in using force to protect himself from the counter-attack that he provoked.

In order for a person lawfully to use force[1] in self-defense, he must reasonably believe such force is necessary to defend himself from what he reasonably believes to be the imminent use of unlawful force.

But a person is not permitted to use deadly force unless he reasonably believes that the use of deadly force is necessary to protect himself against death or serious physical injury.

As used in this instruction, "deadly force" means physical force which is used with the purpose of causing or which a person knows to create a substantial risk of causing death or serious physical injury.

As used in this instruction, the term "reasonably believe" means a belief based on reasonable grounds, that is, grounds that could lead a reasonable person in the same situation to the same belief. This depends upon how the facts reasonably appeared. It does not depend upon whether the belief turned out to be true or false.

On the issue of self-defense as to Count I, you are instructed as follows:

First, if the defendant was not the initial aggressor in the encounter with Jonathan Lorence, and

Second, if the defendant reasonably believed that the use of force was necessary to defend himself from what he reasonably believed to be the imminent use of unlawful force by Jonathan Lorence, and

Third, the defendant reasonably believed that the use of deadly force was necessary to protect himself from death or serious physical injury from the acts of Jonathan Lorence, then his use of deadly force is justifiable and he acted in lawful self-defense.

The state has the burden of proving beyond a reasonable doubt that the defendant did not act in lawful self-defense. Unless you find beyond a reasonable doubt that the defendant did not act in lawful self-defense under this instruction, you must find the defendant not guilty under Count I.

---

[1] As explained further below, because there was evidence Rost used deadly force, MAI-CR 3d 306.06 Part A required that the phrase "non-deadly force" be used at this point in the instruction instead of simply the word "force." MAI-CR 3d 306.06 Part A (bracketed rules before [3] and [4] in Part A). Appellant has not complained about this error in the instruction.

6

You, however, should consider all of the evidence in the case in determining whether the defendant acted in lawful self defense.

Defense counsel tendered a proposed self-defense instruction that was refused by the trial court. The tendered instruction was patterned after MAI-CR 3d 306.06,[2] which approved instruction is for offenses occurring before August 28, 2007, although the offense in this case occurred in July 2009. In addition to being inapplicable to the offense in this case, the tendered instruction also did not include clauses explaining the use of deadly force even though the trial court found there was evidence Rost used deadly force. The tendered instruction did include language explaining the use of non-deadly force that is similar to the language Rost now complains should have been an additional paragraph that would have been inserted as the "Third" paragraph: "if [the defendant] used only such (non-deadly) force as reasonably appeared to be necessary to defend himself, then his use of force is justifiable and he acted in lawful self-defense(.) (, or if) [Fourth] . . . ." MAI-CR 3d 306.06 Part A (bracketed rules before [3] in Part B) and Notes on Use 1 and 5(b). Shortly after the trial court refused Rost's tendered self-defense instruction, defense counsel replied, "No, Your Honor" when he was asked "other than the record that's already been made to [Rost's tendered instruction] as to self-defense, do you have any objections to any of the instructions or any further instructions to offer?"[3]

In closing argument, neither defense counsel nor the prosecutor discussed the difference in the application of the law to the use of non-deadly and deadly force in self-defense. Rather, the prosecutor's focus in closing argument was that the evidence showed beyond a reasonable doubt that Rost "attempted to cause . . . serious physical injury" to Lorence by cutting him with a

---

[2] MAI-CR 3d 306.06 Part A and Notes on Use 1.
[3] Rost's motion for new trial also failed to include a specific objection to the omission from the self-defense instruction given to the jury of the language he now complains should have been, but was not included, in the instruction beyond a general statement that the self-defense instruction "did not conform to MAI-CR 3d and failed to follow substantive law regarding self-defense."

7

knife and did not act in self-defense, while defense counsel's focus in closing argument was that there was no evidence beyond a reasonable doubt that Rost had a knife, "intended to . . . cause serious physical injury," and did not act in self-defense.

After a little over two hours of deliberation, the jury declined to find Rost guilty of assault in the first degree (thus rejecting "serious physical injury"), and found him guilty of assault in the second degree (in favor of "physical injury"). The jury also found Rost guilty of armed criminal action based on its finding that Rost committed assault in the second degree "with[] the knowing use of a dangerous instrument[.]" The instructions defined the phrase "dangerous instrument" to mean "any instrument [or] article . . . that, under the circumstances in which it is used, is readily capable of causing death or other serous physical injury."

**Standard of Review**

An appellate court will reverse

> due to instructional error 'if there is error in submitting an instruction and prejudice to the defendant.' To ascertain whether or not the omission of language from an instruction is error, the evidence is viewed in the light most favorable to the defendant and 'the theory propounded by the defendant.' If the evidence tends to establish the defendant's theory, or supports differing conclusions, the defendant is entitled to an instruction on it.

> The general rule is that an instruction must be based upon substantial evidence and the reasonable inferences therefrom. Substantial evidence of self-defense requiring instruction may come from the defendant's testimony alone as long as the testimony contains some evidence tending to show that he acted in self-defense. Moreover, an instruction on self-defense must be given when substantial evidence is adduced to support it, even when that evidence is inconsistent with the defendant's testimony. Even if no objection is made, the failure to instruct upon a defense supported by the evidence is plain error affecting substantial rights. This Court has also recognized that jury instruction, as to all potential convictions and defenses, is so essential to ensure a fair trial that if a reasonable juror could draw inferences from the evidence presented the defendant is not required to put on affirmative evidence to support a given instruction.

8

*State v. Westfall*, 75 S.W.3d 278, 280-81 (Mo. banc 2002) (internal footnotes omitted).

Prejudice is presumed when the trial court fails to give the jury a self-defense instruction

required by the Missouri Approved Instructions and Notes on Use. As our Supreme Court stated

in *Westfall*:

> Missouri has traditionally placed great emphasis on legally correct
> instructions, and this Court has made it clear that criminal defendants should be
> freely allowed to argue their contentions arising from the facts. The MAI and its
> Notes on Use mandated the alternative instruction. Failure to provide the required
> instruction, or give it in accordance with an accompanying Note on Use, may
> have adversely influenced the jury and is reversible error. '[S]uch errors are
> presumed to prejudice the defendant unless it is clearly established by the State
> that the error did not result in prejudice.'

*Westfall*, 75 S.W.3d at 284 (internal footnotes omitted). "Any deviation from the approved

instructions is presumed prejudicial unless the contrary is clearly shown." *Id.* at 284 n.27. *See*

*also State v. Bolden*, 371 S.W.3d 802, 806, 805-06 (Mo. banc 2012) ("If the defendant injects

self-defense into the case and there is substantial evidence to support a self-defense instruction, it

is reversible error for the trial court to fail to submit a self-defense instruction to the jury under

plain error review. [*Westfall*, 75 S.W.3d at 281 n.9]"; *State v. Mangum*, 390 S.W.3d 853, 861

(Mo.App. E.D. 2013) ("Failure to instruct on a defense supported by the evidence is reversible

plain error.").

Further, *generally*,

> [a]n unpreserved claim of error can be reviewed only for plain error, which
> requires a finding of manifest injustice or a miscarriage of justice resulting from
> the trial court's error. *State v. Severe*, 307 S.W.3d 640, 642 (Mo. banc 2010). For
> instructional error to constitute plain error, the defendant must demonstrate the
> trial court "'so misdirected or failed to instruct the jury' that the error affected the
> jury's verdict." *State v. Dorsey*, 318 S.W.3d 648, 652 (Mo. banc 2010) (quoting
> *State v. Salter*, 250 S.W.3d 705, 713 (Mo. banc 2008)).

*State v. Celis-Garcia*, 344 S.W.3d 150, 154 (Mo. banc 2011). And,

"'[I]nstructional error seldom constitutes plain error. . . .'" *State v. Tillman*, 289 S.W.3d 282, 291 (Mo.App.W.D.2009) (quoting *State v. Darden*, 263 S.W.3d 760, 763 (Mo.App.W.D.2008)). . . . "'If a defect is not readily apparent to alert counsel preparing to argue the case, there is very little likelihood that the jury will be confused or misled.'" *State v. Tisius*, 362 S.W.3d 398, 411 (Mo. banc 2012) (quoting *State v. Green*, 812 S.W.2d 779, 787 (Mo.App.W.D.1991)).

*State v. Oudin*, 403 S.W.3d 693, 697 (Mo.App. W.D. 2013).

### Analysis

In a single point relied on, Rost claims that the "trial court plainly erred in failing to *sua sponte* modify" the self-defense instruction requested by the State and given to the jury because "the jury must be instructed on the right to use both deadly and non-deadly force in self-defense" "when there is a dispute whether" deadly or non-deadly force was used.[4] Assuming *arguendo* that the trial court erred in modifying the instruction, the error did not so misdirect or fail to instruct the jury that the error affected the jury's verdict resulting in manifest injustice or miscarriage of justice.

Viewed in the light most favorable to Rost, there was evidence to support a reasonable inference that Rost used non-deadly force. Rost testified that he did not use a knife, but did have a cell phone in his hand when he became involved in a fight with Lorence. Rost's testimony was supported by the State's evidence that a cell phone belonging to Rost was recovered from the alley where the fight took place. An inference also could be made that even if Rost had a knife, Rost may have used the knife in a defensive manner and "not with the purpose of causing or which a person knows to create a substantial risk of causing death or serious physical injury" as

---

[4] We agree that only plain error review is appropriate because Rost did not make a specific objection to the self-defense instruction given to the jury; tendered an alternative, self-defense instruction that was legally erroneous; and did not include a specific objection to the self-defense instruction given the jury in his motion for new trial. Rule 28.03, Missouri Court Rules (2013). An appellate court "will not use plain error to impose a *sua sponte* duty on the trial court to correct [the complaining party's] invited errors." *Bolden*, 371 S.W.3d at 806, 805-06 (no plain error review of the complaining party's invited errors).

10

the use must be to qualify for deadly force. Viewed as we must view it for a self-defense instruction, the evidence supported a reasonable inference that Rost used non-deadly force.

On the other hand, a witness, who was a female acquaintance of Lorence's, remembered seeing Rost with a knife at the time of the fight. Lorence also required a total of fifteen stitches with the inference that a knife was used that caused his injuries. Thus, there was evidence supporting the instruction regarding deadly force. Rost's proposed instruction, which did not include the use of deadly force and was not based on the current MAI, was clearly erroneous.

In these circumstances, for offenses occurring on or after August 28, 2007, MAI-CR 3d 306.06 Part A requires instruction on the use of both non-deadly and deadly force in self-defense.[5] By omitting the paragraph "Third" addition on the use of non-deadly force, and using only the paragraph on the use of deadly force, the trial court technically deviated from the current MAI-CR 306.06 Part A and may have removed from the jury's consideration the question of fact of whether Rost used non-deadly force in lawful self-defense.

However, throughout the instruction, the jury was instructed that Rost could use "force" in self-defense if certain conditions were met, but he could not use "deadly force" unless other conditions were met. Those conditions were fully described in the instruction. We find the jury was not misled by the instruction or that the instruction so misdirected or failed to instruct the jury that the error affected the jury's verdict. We find this is so because by its verdicts, the jury declined to find beyond a reasonable doubt that Rost attempted to cause serious physical injury to Lorence. That fact makes it likely the jury did not believe beyond a reasonable doubt that Rost used deadly force.

---

[5] MAI-CR 306.06 Part A (bracketed rules before [3] in Part B) and Notes on Use 1 and 5(b).

The jury did, however, find that Rost was guilty of armed criminal action based on its finding that Rost committed assault in the second degree "with[] the knowing use of a dangerous instrument." The instructions defined the phrase "dangerous instrument" to mean "any instrument [or] article . . . that, under the circumstances in which it is used, is readily capable of causing death or other serous physical injury." Rost's contention was that he was simply trying to get away, that if Lorence had been cut or injured, it was by a sharp edge on his watch. The jury rejected that claim when it determined that Rost knowingly used a dangerous instrument in the assault. Therefore, the jury rejected Rost's claim that he was unaware there had been anyone "cut or injured," that if someone was cut it was by his watch, and that he was just trying to get away from the group. The jury, however, rejected the State's claim in the first-degree-assault instruction that Rost attempted to cause "serious physical injury" to Lorence, and found physical injury with a dangerous instrument.

Although the jury was not given the instruction which contained the additional language, the jury was instructed that Rost was permitted to use "force" to protect himself against an unlawful attack and that he must have reasonably believed such force was necessary to defend himself from what he reasonably believed to be imminent use of unlawful force. The jury was instructed that even "deadly force" was lawful if the "defendant reasonably believed that the use of deadly force was necessary to protect himself from death or serious physical injury[.]" The jury had been told that the use of force was lawful against an unlawful attack unless Rost was the initial aggressor who provoked the counter-attack. Although it may not have been as clear as MAI-CR 3d 306.06 Part A would have been, under the facts of this case and the verdict of this

jury, we cannot find plain error.  Rost has not demonstrated that the instruction so misdirected or failed to instruct the jury and that the error affected the jury's verdict.  We affirm.

Nancy Steffen Rahmeyer, P.J. – Opinion Author

Daniel E. Scott, J. – Concurs

William W. Francis, Jr., C.J. – Concurs