

# In the Missouri Court of Appeals
# Eastern District
## DIVISION FOUR

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED99269 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court of |
| | ) | St. Charles County |
| vs. | ) | |
| | ) | Honorable Lucy D. Rauch |
| ADAM L. STEINMANN, | ) | |
| | ) | |
| Appellant. | ) | Filed: April 8, 2014 |

### *Introduction*

Adam Steinmann (Defendant) appeals the judgment of conviction entered by the Circuit

Court of St. Charles County after a jury found him guilty of two counts of second-degree

involuntary manslaughter and one count of driving with a revoked license. Defendant claims the

trial court erred in: (1) submitting "vague and abstract" verdict directors for the involuntary

manslaughter counts; (2) excluding an expert witness; and (3) sustaining the prosecutor's

objections and requests to strike portions of Defendant's father's testimony relating to the cause

of the accident. We affirm.

### *Factual and Procedural Background*

Defendant worked for his father, Larry Steinmann (Father), owner of Steinmann & Sons

Grading. On July 8, 2009, Father directed Defendant to transport a bulldozer[1] from St. Charles

County to Florissant. Defendant and Father loaded the bulldozer onto their tractor-trailer, and

---

[1] The bulldozer is variously referred to in the record as a high lift, Caterpillar, tractor, track
loader, and tractor loader. For the sake of consistency, we will use the term bulldozer.

each secured one side of the bulldozer to the tractor-trailer with a single load binder.[2] Defendant, whose commercial driver's license was suspended, drove the tractor-trailer on Highway D, a narrow, two-lane county road. As Defendant maneuvered the truck around a curve, the bulldozer fell off the trailer and struck a car in the oncoming lane. The driver and passenger of the vehicle, Judith Ulery and her mother Elsie Sherman, died as a result of the accident.

The State charged Defendant as a prior offender with two counts of second-degree involuntary manslaughter and one count of driving while revoked. The trial court held a three-day jury trial in August 2012. At trial, the State presented as witnesses: two relatives of the victims; a driver who observed Defendant speeding on Highway D on July 8, 2009; a neighbor who observed the bulldozer fly through the air and strike the victims' car; several law enforcement officers who responded to and investigated the accident; the chief medical examiner in St. Louis, St. Charles, Jefferson, and Franklin Counties; and a vehicle specialist who performed roadway accident reconstruction and vehicle mechanical analysis. Defendant and Father testified for the defense.

The jury found Defendant guilty on all three counts. The trial court sentenced Defendant to consecutive terms of four years' imprisonment on the involuntary manslaughter charges and fined Defendant $300 for driving while revoked. Defendant appeals.

---

[2] "Load binders," or ratchets, are devices used to secure a load on a tractor-trailer. At trial, the State presented evidence that binders are rated to hold specific amounts of weight and, according to federal and State regulations, as well as a "notice or sticker" that appeared on the side of the bulldozer, "the proper way to secure a bulldozer to a tractor trailer for safe cargo" is to use four binders, one at each corner of the bulldozer, plus a chain for the bulldozer's attached bucket.

*Discussion*

*1. Alleged Instructional Error*

In his first point on appeal, Defendant claims the trial court erred in submitting Instruction Nos. 5 and 6, the verdict directors for the two charges of involuntary manslaughter because the instructions improperly: (1) failed to "define or delimit the 'conditions' that the jurors were permitted to consider" in determining whether Defendant acted with criminal negligence; and (2) gave the jury a roving commission "to choose any facts that suited its fancy or perception of logic to find [Defendant] guilty." More specifically, Defendant asserts that the absence of instructional language defining the "conditions" the jury could consider when determining criminal negligence, coupled with the prosecutor's emphasis on Defendant's "willingness to drive the truck in an impaired [mechanical] condition," prejudiced his defense. In response, the State argues that the trial court did not plainly err in submitting Instruction Nos. 5 and 6 because they conformed to the applicable Missouri Approved Instructions–Criminal (MAI CR) and "were sufficiently specific to direct the jury's attention to what findings it was required to make in order to find that Defendant was criminally negligent."

We first address whether Defendant's allegation of trial court error is reviewable. See State v. Mangum, 390 S.W.3d 853, 860 (Mo.App.E.D. 2013). To preserve a claim of instructional error for review, counsel must make specific objections to the allegedly erroneous instruction at trial and in a motion for new trial. Id.; Rule 28.03. While an appellate court may review unpreserved claims of instructional error under Rule 30.20 "if manifest injustice would otherwise occur," the Supreme Court has held "when a defendant proffers an instruction, the defendant waives appellate review – even plain-error review – of the trial court's submission of

3

that instruction to the jury." Mangum, 390 S.W.3d at 861 (citing State v. Bolden, 371 S.W.3d 802, 806 (Mo. banc 2012)).

At the instruction conference, the prosecutor submitted Instruction Nos. 5 and 6, which were modeled on MAI CR-3d 313.14. Instruction No. 5 provided, in pertinent part:

> As to Count 1, if you find and believe from the evidence beyond a reasonable doubt:
> First, that on or about July 8, 2009, in the County of St. Charles, State of Missouri, the defendant caused the death of Judith Ulery by transporting a track loader which came off its trailer and collided with a vehicle occupied by Judith Ulery, and
> Second, that the defendant was traveling *too fast for conditions* around a curve with an improperly secured track loader, and
> Third, that defendant was thereby criminally negligent,
> then you will find the defendant guilty under Count 1 of involuntary manslaughter in the second degree.

(emphasis added).[3]

Defense counsel objected to the proffered instruction, arguing that the first paragraph should specify that the cause of the victim's death was Defendant's alleged failure to properly secure the bulldozer, and proposed the following:

> . . . . I think the only instruction that would in any way say the law would be as follows; as to Count 1, if you find and believe from the evidence beyond a reasonable doubt, first, that on or about July 8th, 2009, County of St. Charles, State of Missouri, the defendant caused the death of Judith Ulery by failing to properly secure a tractor loader, which came off its trailer and collided with a vehicle occupied by Judith Ulery; second, that the defendant was traveling *too fast for conditions* around a curve, and with an improperly secured tractor loader . . . .

(emphasis added). The prosecutor disagreed, asserting that the first paragraph "should describe the means by which the death was caused . . . . The failure to secure wasn't what killed her. It was what led the tractor loader to come off the trailer and kill her." In response, defense counsel

---

[3] Instruction No. 6 mirrored Instruction No. 5 but submitted Count II, the charge of second-degree involuntary manslaughter based on the death of Elsie Sherman.

4

suggested, as an alternative, that the second paragraph "should state that the defendant failed to properly secure the tractor loader and then traveled *too fast for conditions* around a curve with an improperly secured tractor loader" because "without stating that the defendant failed to properly secure [the bulldozer] it's not sufficient under the law."[4] (emphasis added). After further argument, the trial court decided "to give the State's proposed verdict director, finding that the proper elements have been submitted."

Defendant asserts that Instruction Nos. 5 and 6 were ambiguous and overly broad because they "failed to define or delimit the 'conditions' that jurors were permitted to consider" in determining whether Defendant acted with criminal negligence. In essence, Defendant faults the trial court for failing to include language defining the word "conditions" to exclude "tire, brake and other mechanical defects" in the tractor-trailer or as Defendant states in his reply brief, "vehicle safety inspection defects." However, Defendant fails to identify any portion of the record, either the instruction itself or statements during the instruction conference, that demonstrates defense counsel sought to include definitional language limiting the word "conditions." To the contrary, the transcript of the instruction conference establishes that Defendant's proffered instructions contained the same alleged defect (lack of definitional language) as those submitted by the prosecutor.

The trial court does not have a *sua sponte* duty to correct an allegedly erroneous instruction proffered by the party claiming error. Bolden, 371 S.W.3d at 806. If the trial court had rejected the State's versions of Instruction Nos. 5 and 6 in favor of Defendant's, the same

---

[4] At the instruction conference, defense counsel informed the trial court that he would "prepare and submit" to the trial court the "proposed instruction which [he had] read into the record . . . ." However, Defendant's proposed instructions are not part of the record on appeal. The instruction conference also establishes that defense counsel did not object to the State's verdict directors on the grounds that he now raises on appeal.

5

issue he raises on appeal would be present. See State v. Oudin, 403 S.W.3d 693, 698 (Mo.App.W.D. 2013). As in Oudin, we conclude that, in light of Bolden, requesting that the trial court submit an instruction that contains the same alleged deficiency that the defendant challenges on appeal, waives plain error review.[5] Point denied.

*2. Exclusion of Expert Witness Testimony*

In his second point on appeal, Defendant claims the trial court erred in excluding the expert testimony of Graham Zieba, a senior traffic study specialist with the Missouri Department of Transportation. Defendant asserts that the exclusion of Mr. Zieba's testimony limited Defendant's ability to prove his theory of defense that he was not driving at an excessive speed at the time of the accident because Mr. Zieba's testimony would have: (1) refuted the prosecutor's suggestion that the cautionary speed recommendations posted near the accident site were speed limits; and (2) established that the determination of cautionary speed recommendations "is an inexact process." The State counters that the trial court did not abuse its discretion in excluding Mr. Zieba's testimony because: Mr. Zieba had no specific knowledge of the advisory speed signs located near the curve where the accident occurred; his proposed testimony was cumulative to other testimony establishing that cautionary speed signs are merely advisory; and Defendant failed to demonstrate prejudice.

"The admission or exclusion of expert testimony is a matter committed to the trial court's sound discretion." State v. Ware, 326 S.W.3d 512, 528 (Mo.App.S.D. 2010) (citing State v. Davis, 814 S.W.2d 593, 603 (Mo. banc 1991)). However, on questions of relevance, the trial court's discretion "is bounded by the principle that the court's rulings will be overturned if they

---

[5] Even if plain error review is appropriate, we conclude that the absence of a definition of "conditions" excluding mechanical defects did not so misdirect or fail to instruct the jury such that the alleged defect affected the verdict. See, e.g., State v. Wurtzberger, 40 S.W.3d 893, 898 (Mo. banc 2001).

are 'clearly against the logic of the circumstances.'" State v. Walkup, 220 S.W.3d 748, 757 (Mo. banc 2007) (quoting State v. Forrest, 183 S.W.3d 218, 223 (Mo. banc 2006)).

We review evidentiary decisions for prejudice, not mere error, and we will affirm the trial court's ruling "unless it was so prejudicial as to deprive the appellant of a fair trial." State v. Norman, 145 S.W.3d 912, 919 (Mo.App.S.D. 2004). The erroneous exclusion of evidence in a criminal case creates a rebuttable presumption of prejudice, which the State may overcome by proving that the error "was harmless beyond a reasonable doubt." Walkup, 220 S.W.3d at 757. In considering whether the exclusion of evidence was harmless beyond a reasonable doubt we consider the facts and circumstances of the particular case, the evidence presented, the nature of the charge, and the role the excluded evidence would have played in the defense's theory. Norman, 145 S.W.3d at 920.

When defense counsel announced his intent to call Mr. Zieba to testify, the prosecutor moved "to strike this witness" on the grounds that "he's irrelevant, he cannot lay a foundation, he has no knowledge of this curve, personally . . . ." In response, defense counsel asserted that Mr. Zieba's "knowledge of this particular curve or of the entire roadway [was] irrelevant" because the purpose of Mr. Zieba's testimony was to "explain to the jury what the cautionary signs mean, how they are derived." Additionally, Mr. Zieba would testifiy that the speed recommendations "are cautionary. They don't set the speed limit." The trial court agreed with the prosecutor that Mr. Zieba was not qualified to testify to whether a driver traveling forty-five miles per hour on the curve in question was violating the law and further stated that, "if all he's going to testify to is 30 is the cautionary speed[,] I think that's already before the jury."

The trial court allowed Mr. Zieba's testimony for purposes of an offer of proof. Mr. Zieba testified that his general duties included "traffic studies . . . traffic signals, signs, striping

and safety." Mr. Zieba explained that he used a device called an inclinometer, which he carried in a four-passenger Chevy Impala, to determine the advisory speeds of horizontal curves on roadways. When defense counsel asked Mr. Zieba whether the advisory speed applied only to passenger vehicles and not "let's say, a Porsche 911 or a semi-trailer," Mr. Zieba replied, "Well, it's an advisory speed for anybody traveling on the road." Mr. Zieba had general knowledge of Highway D in St. Charles County, but he did not know the advisory speed on the section of the road where the accident occurred. The record further reflects that Mr. Zieba neither generated the advisory speeds nor placed the cautionary signs on the relevant portion of Highway D. After considering Defendant's offer of proof, the trial court sustained the State's objection and excluded Mr. Zieba's testimony on the grounds that it "either would be cumulative or irrelevant."

Even if we assume *arguendo* that the trial court erred in excluding Mr. Zieba's testimony, we conclude that such error was harmless beyond a reasonable doubt. Defendant maintains that the exclusion of Mr. Zeiba's testimony was prejudicial because it "would have made it less probable that the cautionary speed posting on Highway D was meaningful or controlling for the driver of a tractor trailer passing through the curve on that road." However, Mr. Zieba specifically stated that a cautionary speed posting is "an advisory speed for anybody traveling on the road," not only for drivers of four-passenger vehicles.

Defendant also contends that Mr. Zieba's testimony "would have made it less probable that jurors would confuse the posting of a cautionary speed as the establishment of a legal speed limit, superseding the uniform 55-mile-per-hour limit that generally governs traffic on two-lane Missouri roads designated by a letter." Our review of the record reveals that, the undisputed evidence at trial clearly established that the legal speed limit on Highway D was fifty-five miles per hour and the recommended speed limit where the accident occurred was thirty miles per

8

hour. Donna Dalton, a witness who testified that she observed Defendant driving approximately fifty miles per hour prior to the accident, acknowledged the difference between speed limits and cautionary signs. Sergeant Kevin Jett, from the patrol division of the St. Charles County Sheriff's Department, testified that there is "a cautionary speed sign" at the curve where the accident occurred and that the "suggested speed" was thirty miles per hour. In addition, Timothy Finley, the State's expert in accident reconstruction, testified that the "cautionary or advisory speed limit sign" at the site "indicate[d] 30 miles per hour at an east bound direction approaching the accident curve." Additionally, in closing arguments, the prosecutor and defense counsel referred to the thirty mile-per-hour limit as an "advisory speed" or "cautionary speed."[6] Given the undisputed evidence in the record that thirty-miles-per-hour was the recommended speed and not the legal speed limit, the exclusion of Mr. Zieba's testimony to that effect was harmless beyond a reasonable doubt. See e.g., State v. Graham, 345 S.W.3d 385, 391 (Mo.App.S.D. 2011) (trial court's exclusion of evidence that is merely cumulative to other admitted and undisputed evidence was harmless beyond a reasonable doubt). Point denied.

*3. Exclusion of Defendant's Father's Testimony*

In his final point on appeal, Defendant claims the trial court erred in sustaining the prosecutor's objections to and requests to strike Father's testimony regarding the adequacy of the restraints and method used to secure the bulldozer on the tractor-trailer and the cause of the bulldozer's fall from the trailer. Defendant asserts that Father was sufficiently knowledgeable and qualified to answer those questions, his answers would have been relevant to material issues

---

[6] In closing arguments, the prosecutor stated: "You heard testimony that on each side of that curve there were warning signs indicating and suggesting an advisory speed of 30 miles per hour." Likewise, defense counsel asserted in closing: "Remember, we're not charged – there is no charge of speeding. There is no – because by everybody's agreement the speed limit is 55. The cautionary speed is 30."

in the case, and the exclusion of his testimony prevented Defendant from proving his theory of defense. In response, the State argues that the trial court did not abuse its discretion in sustaining the prosecutor's objections and striking Father's testimony because Father was not present when the accident occurred and the defense laid no foundation qualifying Father as an expert to testify about the adequacy of the restraints used and the cause of the bulldozer's fall. The State further contends that Defendant suffered no prejudice because the testimony he claims was improperly excluded was presented without objection during other portions of Father's testimony.

As discussed above, trial courts have broad discretion to admit or exclude evidence at trial, and a reviewing court will reverse only upon a showing of a clear abuse of discretion. State v. Sanchez, 186 S.W.3d 260, 264 (Mo. banc 2006). Where a defendant has properly preserved the error for appellate review, it is the State's burden to rebut the presumption of prejudice by demonstrating that the exclusion of evidence was harmless beyond a reasonable doubt. State v. Sanders, 126 S.W.3d 5, 23 (Mo.App.W.D. 2003).

Defendant's theory of defense was that any negligence on the part of Defendant was not criminal negligence because he reasonably believed that the bulldozer was adequately secured to the tractor-trailer. Defendant also argued that the cause of the accident was neither the improper securing of the load nor the speed at which he drove, but rather the failure of the bulldozer's parking brake system and/or one of the binders. In support of this defense, Defendant called his father, president of Steinmann & Sons Grading, as a witness. Father testified that he had driven a tractor-trailer with a "heavy piece of gear on it," such as a bulldozer, "over a thousand" times and had secured the bulldozer to the trailer "in the exact manner that [he] described" at trial "[t]he same amount, thousands of times." Father described the process by which he and Defendant loaded the bulldozer and secured it to the tractor-trailer on the day of the accident. On

10

redirect examination, Father stated "it was [his] opinion when [Defendant] bound [the bulldozer] and [Father] checked it that it was safe." Father also opined that the bulldozer "would not have moved anywhere if the left parking brake would have been working. And it did not work and [the bulldozer] rolled over the top of the binder."

On appeal, Defendant claims the trial court erred in sustaining the prosecutor's objections and requests to strike answers to the following questions that defense counsel asked Father:

- "And in your experience, and having loaded this [bulldozer] on your own trailer, could it have slid off of that trailer?"

- "In your experience, having hauled things like that on that trailer for a thousand times or more, would it have been possible that [bulldozer] would have slid off?"

- "If it would have slid off sideways you –"

- "[D]escribe the gouge marks for the Court that you see. There are some in the rear of the trailer, and there is some up along the front portion of the trailer; is that correct?"

- "Did you consider the [bulldozer] on that trailer to be secured?"

- "Would you, knowing that it was not properly secured, have placed your son in the tractor and told him to drive?"

- "Would you have driven the tractor that away [sic]?"

The trial court later explained that it sustained the prosecutor's objections because defense counsel did not endorse Father as an expert witness and Father "was attempting to testify about something that he did not witness so that's why the Court would not allow that testimony to go forward."

11

Initially, we find that Defendant failed to preserve this issue for our review. "When a court sustains an objection and excludes evidence, to preserve the point for appeal the offering party must make a specific and definite offer of proof." State v. Hunter, 957 S.W.2d 467, 470 (Mo.App.W.D. 1997). "It is not error to exclude evidence, the relevance of which is not apparent, without a showing by the party seeking its admission of the nature of the testimony and the purpose for which it is offered." State v. Bell, 632 S.W.2d 68, 70 (Mo.App.E.D. 1982). Here, when the prosecutor objected to defense counsel's questions relating to the cause of the accident and the manner in which the bulldozer fell from the tractor-trailer, defense counsel made no offer of proof. Nor did defense counsel explain to the trial court the relevance of his questions, the reason the prosecutor's objections were improper, or the substance of the testimony he wished to elicit. See, e.g., State v. Knowles, 946 S.W.2d 791, 795 (Mo.App.W.D. 1997).

Because Defendant did not preserve the error, we do not presume prejudice and we review only for plain error. See State v. Wyble, 211 S.W.3d 125, 135 (Mo.App.W.D. 2007). This court has discretion to review unpreserved claims for plain error where the error is evident, obvious, and clear. Rule 30.20; State v. Austin, 411 S.W.3d 284, 293 (Mo.App.E.D. 2013). "The defendant bears the burden of showing not only that plain error occurred, which resulted in manifest injustice or a miscarriage of justice, but also that the error was outcome[-]determinative." Austin, 411 S.W.3d at 293.

Having reviewed the record, we find no error, plain or otherwise. Contrary to Defendant's claim on appeal, the trial court's rulings did not preclude Defendant from presenting Father's testimony as to Defendant and Father's mental states and the cause of the accident. As previously stated, Father testified that he had secured heavy machinery to and transported it by

tractor-trailer "over a thousand" times, he believed the bulldozer was secure and safe, and, in his opinion, the bulldozer fell from the tractor-trailer because the bulldozer's parking brake failed. The trial court's sustention of the prosecutor's objections did not result in a manifest injustice or a miscarriage of justice because Father was permitted to communicate these facts to the jury without objection during his testimony. See State v. Smith, 265 S.W.3d 874, 878 n.1 (Mo.App.E.D. 2008). Point denied.

### *Conclusion*

The judgment of the trial court is affirmed.

_____
Patricia L. Cohen, Judge

Lisa S. Van Amburg, P.J., and
Philip M. Hess, J., concur.

13